ORIGINAL

1  DARRYL J. HOROWITT #100898
   CHRISTINE J. LEVIN #192181
2  COLEMAN & HOROWITT, LLP
   Attorneys at Law
3  499 West Shaw, Suite 116
   Fresno, California 93704
4  Telephone: (559) 248-4820
   Facsimile: (559) 248-4830
5
   Attorneys for Plaintiff,
6  SUSAN SANDELMAN, AS TRUSTEE
   OF THE ESAN TRUST
7

FILED

E-FILING

2008 JAN 29  A 11: 0

RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA. S.J

ADR

Fee Paid
SI

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                        SAN JOSE DIVISION

11 SUSAN SANDELMAN, AS TRUSTEE          C 08   00681 HRL
   OF THE ESAN TRUST,
12
                    Plaintiff,          **COMPLAINT FOR BREACH OF**
13                                      **PROMISSORY NOTE, MONEY**
        v.                              **LENT, FORECLOSURE OF DEED**
14                                      **OF TRUST, AND CLAIM AND**
   B&B PROPERTY MANAGEMENT, LLC,        **DELIVERY**
15 dba BELLACH'S LEATHER FOR
   LIVING,                              **DEMAND FOR TRIAL BY JURY**
16
                    Defendant.
17

18

19      Plaintiff, SUSAN SANDELMAN, as Trustee of the Esan Trust, alleges:

20                     **JURISDICTION AND VENUE**

21      1.      Jurisdiction of this court is found upon 28 U.S.C. § 1332(a)(1), as this action is

22 brought by plaintiff, a resident of the State of Florida, against a citizen of a different state,

23 California, and the amount in controversy exceeds $75,000.

24      2.      Venue in this court is proper pursuant to 28 U.S.C. § 1391(a)(1) in that defendant

25 resides, and the events which give rise to plaintiff's complaint arose, in the Northern District of

26 California, San Jose Division.

27                            **PARTIES**

28      3.      Plaintiff, SUSAN SANDELMAN ("SANDELMAN"), is, and at all times herein

                                      1

1   mentioned was, the trustee of the Esan Trust ("THE TRUST"). SANDELMAN is a resident of

2   the City of Boca Raton, Florida.

3       4.      Plaintiff is informed and believes and thereon alleges that defendant, B&B

4   MANAGEMENT GROUP, LLC ("B&B"), is, and at all times herein mentioned was, a resident

5   of the County of Santa Clara, California, within the Northern District of California, San Jose

6   Division. Plaintiff is further informed and believes and thereon alleges that B&B conducts

7   business under the fictitious business name and style of BELLACH'S LEATHER FOR LIVING.

8                                    **FACTS**

9   **A.      THE PROPERTY**

10      5.      Plaintiff is the owner of certain real property located at 4695 Stevens Creek Blvd.,

11  Santa Clara, California ("THE PROPERTY").

12      6.      On June 30, 2000, B&B became a tenant in THE PROPERTY when it entered

13  into an Assignment of Lease and Assumption Agreement with Apria Healthcare.

14  **B.      THE NOTE**

15      7.      On or about June 30, 2000, in connection with B&B's occupancy of THE

16  PROPERTY, and for valuable consideration, B&B executed a promissory note ("THE NOTE")

17  in favor of Apria Healthcare, a true and correct copy of which is attached hereto as Exhibit "A"

18  and made a part hereof.

19      8.      On or about June 30, 2000, for valuable consideration, and to secure payment of

20  THE NOTE, B&B entered into a Leasehold Deed of Trust, Assignment of Rents, Security

21  Agreement and Financing Statement (Fixture Filing), (hereinafter "LEASEHOLD DEED OF

22  TRUST"), a true and correct copy of which is attached hereto as Exhibit "B" and made a part

23  hereof. THE LEASEHOLD DEED OF TRUST was recorded in the Santa Clara County

24  Recorder's Office on July 3, 2000.

25      9.      On or about June 30, 2000, for valuable consideration, and to further secure THE

26  NOTE, B&B executed a Subordinated Deed of Trust, Assignment of Rents, and Financing

27  Statement (Fixture Filing) (hereinafter "SUBORDINATED DEED OF TRUST"), a true and

28  correct copy of which is attached hereto as Exhibit "C" and made a part hereof.

2

1    10.    On or about June 7, 2005, for valuable consideration, Apria Healthcare assigned

2    all right, title, and interest in THE NOTE, LEASEHOLD DEED OF TRUST, and

3    SUBORDINATED DEED OF TRUST to plaintiff.

4    11.    On or about September 7, 2005, plaintiff gave notice to defendant of the

5    assignment of THE NOTE, LEASEHOLD DEED OF TRUST, and SUBORDINATED DEED

6    OF TRUST.

7    **C.    BREACH OF THE NOTE**

8    12.    Pursuant to the terms of THE NOTE, the final payment in the amount of

9    $331,703.73 was to be paid on or before September 1, 2007.

10    13.    On or about September 2, 2007, defendant breached the terms of THE NOTE by

11    failing to pay to plaintiff the balance due under the terms of THE NOTE.

12    14.    Despite demand, defendant has failed to pay the balance due under the terms of

13    THE NOTE.

14                    **FIRST CLAIM FOR RELIEF**

15                    **(For Breach of Promissory Note)**

16    15.    As a result of defendant's breach of THE NOTE, plaintiff has been damaged in

17    the sum of $275,986.81, together with interest at the rate of 12% per annum in an amount

18    according to proof.

19                    **SECOND CLAIM FOR RELIEF**

20                    **(For Money Lent)**

21    16.    Within the last four years, at Santa Clara, California, defendant became indebted to

22    plaintiff for money lent in the sum of $331,703.73, together with interest at the rate of 12% per

23    annum from September 1, 2007, until paid in full.

24    17.    Despite demand, defendant has failed to pay the amount due and there is now due,

25    owing and unpaid, the sum of $275,986.81, together with interest at the rate of 12% per annum from

26    September 1, 2007.

27                    **THIRD CLAIM FOR RELIEF**

28                    **(For Foreclosure of SUBORDINATED DEED OF TRUST)**

3

18.    The real property that is the subject matter of this action is located in Santa Clara County, State of California, and is commonly described as 4695 Stevens Creek Boulevard in Santa Clara, California ("THE PROPERTY"). THE PROPERTY is not a unit apartment complex.

19.    Plaintiff has performed all of the terms and conditions on its part required to be performed pursuant to THE NOTE, LEASEHOLD DEED OF TRUST, and SUBORDINATED DEED OF TRUST.

20.    On or about September 1, 2007, B&B breached the terms of THE NOTE by failing to pay off THE NOTE in full as was required by the terms of THE NOTE. As a result of the breach of THE NOTE, B&B breached the LEASEHOLD DEED OF TRUST and SUBORDINATED DEED OF TRUST.

21.    On October 29, 2007, made demand on B&B for payment due under the note but B&B has failed and refused and continues to fail and refuse to do so.

22.    By virtue of the breach of THE NOTE, LEASEHOLD DEED OF TRUST, and SUBORDINATED DEED OF TRUST, Plaintiff is entitled to foreclose on the LEASEHOLD DEED OF TRUST and SUBORDINATED DEED OF TRUST.

23.    As a proximate result of B&B's breach, plaintiff has incurred and will continue to incur Trustee's fees, charges, attorneys' fees, and other costs in an amount according to proof at the time of trial.

## FOURTH CLAIM FOR RELIEF

### (For Claim and Delivery - LEASEHOLD DEED OF TRUST)

24.    By virtue of the LEASEHOLD DEED OF TRUST, defendant granted to plaintiff a security interest in all fixtures located on, attached to, installed in, or used in connection with THE PROPERTY (hereinafter "THE FIXTURES").

25.    Defendant is in possession of the fixtures pursuant to their leasehold interest in THE PROPERTY.

26.    By virtue of defendant's breach of THE NOTE, defendant is in breach of the LEASEHOLD DEED OF TRUST and, as such, plaintiff is entitled to possession of THE FIXTURES. The exact value of THE FIXTURES is unknown to plaintiff, but plaintiff is

4

1    informed and believes and thereon alleges that THE FIXTURES have a value in excess of

2    $25,000.

3        27.    By virtue of this complaint, plaintiff has demanded that defendant return THE

4    FIXTURES to plaintiff, but defendant has failed and refused, and continues to fail and refuse, to

5    return THE FIXTURES and continues to hold possession of THE FIXTURES in violation of

6    plaintiff's right to immediate possession.

7        28.    During, and as a proximate result of, defendant's wrongful possession of THE

8    FIXTURES, plaintiff has suffered the loss of use and enjoyment of THE FIXTURES.

9        29.    During, and as a further proximate result of defendant's wrongful possession and

10    retention of THE FIXTURES, plaintiff has suffered the loss of depreciation of THE FIXTURES

11    to its damage in an amount according to proof.

12        WHEREFORE, plaintiff prays for judgment against defendant as follows:

13    **ON THE FIRST AND SECOND CLAIMS FOR RELIEF**

14        1.    For damages in the sum of $275,986.81;

15        2.    For interest at the rate of 12% per annum from September 1, 2007.

16    **ON THE THIRD CLAIM FOR RELIEF**

17        1.    For a determination that defendant is personally liable for payments for the sums

18    secured by said Deed of Trust, and that a deficiency judgment be entered against it for all sums

19    unpaid following sale;

20        2.    For an order permitting plaintiff or any parties to this action to become a

21    purchaser at the foreclosure sale;

22        3.    When time for redemption has elapsed, that the appropriate person execute a

23    Certificate of Sale to THE PROPERTY for the purchasers at the sale, and that the purchasers be

24    put into possession of THE PROPERTY upon production of said certificate; and

25        4.    For all other appropriate relief.

26    **FOURTH CLAIM FOR RELIEF**

27        1.    For the immediate possession of THE FIXTURES or, if THE FIXTURES cannot

28    be delivered, for their value in an amount according to proof;

5

1    2.    For damages for loss of use of THE FIXTURES in an amount according to proof;

2    and

3    3.    For damages for depreciation of THE FIXTURES in an amount according to

4    proof.

5

### ON ALL CLAIMS FOR RELIEF

6    1.    For costs of suit, including reasonable attorneys' fees incurred herein; and

7    2.    For such other and further relief as the court may deem just and proper.

8

9    Dated: January 28, 2008                    COLEMAN & HOROWITT, LLP

10

11                                             By: _____

12                                                 DARRYL J. HOROWITT
                                                   Attorneys for Plaintiff,
13                                                 SUSAN SANDELMAN, AS TRUSTEE
                                                   OF THE ESAN TRUST

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

6

1

## **DEMAND FOR JURY TRIAL**

2

Plaintiff hereby demands trial by jury in the above-captioned matter.

3

4      Dated: January 28 , 2008                    COLEMAN & HOROWITT, LLP

5

6                                                   By: _____

7                                                        DARRYL J. HOROWITT
                                                         Attorneys for Plaintiff,
8                                                        SUSAN SANDELMAN, AS TRUSTEE
                                                         OF THE ESAN TRUST

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

7

COPY

## COMMERCIAL LOAN NOTE SECURED BY DEED OF TRUST

$690,000.00                    Santa Clara, California                    June 30, 2000

For good and valid consideration, B&B MANAGEMENT GROUP, LLC, a California limited liability company ("Borrower"), hereby promises to pay to the order of APRIA HEALTHCARE, INC., a Delaware corporation ("Lender") at its office at 3560 Hyland Avenue, Costa Mesa, California 92626, or at such other place as Lender may designate in writing, in lawful money of the United States of America, the principal sum of SIX HUNDRED NINETY THOUSAND DOLLARS ($690,000.00), together with interest on the principal balance from time to time outstanding hereunder from the date hereof until maturity, whether scheduled or accelerated, at a fixed rate per annum of Nine Percent (9%). This promissory note is secured by a deed of trust of even date herewith entered into by Borrower, as trustor, for the benefit of Lender, as beneficiary (the "Deed of Trust").

The principal balance hereof shall not bear interest from the date hereof until July 5, 2000. Interest for the period commencing on July 5, 2000 and ending on September 30, 2000 shall (i) be added to the principal balance of this Note on October 1, 2000, and (ii) bear interest from October 1, 2000 until final payment thereof at Maturity or earlier as herein provided. Commencing October 1, 2000 and ending September 1, 2007, principal and interest shall be payable hereunder by Borrower in consecutive monthly installments, each in the amount of $8,740.63 due on the first day of each consecutive calendar month.

The entire unpaid principal balance hereof, together with all accrued and unpaid interest thereon, shall be finally due and payable on September 1, 2007 (the "Maturity Date").

Principal, interest, and all other sums owed Lender under this Note or any Loan Document (as defined below) shall be evidenced by entries in records maintained by Lender for such purpose. Each payment on and any other credits with respect to principal, interest and all other sums outstanding under this Note or any Loan Document shall be evidenced by entries in such records. Lender's records shall be conclusive evidence thereof.

The principal balance from time to time outstanding under this Note may be prepaid in whole or in part at any time and from time to time without premium or penalty provided that Borrower shall first have provided Lender with thirty (30) days prior written notice of its intention to do so and shall designate such payment as a prepayment at the time it is made. All prepayments shall be applied first to the payment of accrued and unpaid interest and then to the payment of principal in the inverse order of its maturity.

Notwithstanding the rights given to Borrower pursuant to California Civil Code sections 1479 and 2822 or equivalent provisions in the laws of the state specified in the governing law clause of this document (and any amendments or successors thereto), to designate how payments will be applied, Borrower hereby waives such rights. With respect to involuntary payments, Lender shall have the right, in the reasonable exercise of its discretion, to determine the order and method of the application of payments to this and/or any other credit facilities that may be provided by Lender to Borrower and to revise such application prospectively or retroactively at its discretion.

Any past due payments of principal, and to the extent permitted by law, interest on this Note shall bear interest from their respective maturities, whether scheduled or accelerated, at a fixed rate per annum at all times equal to Twelve Percent (12%), whether before or after demand, judgment or commencement of a bankruptcy case by Borrower, with such interest to be payable from time to time on demand.

Interest and fees shall be calculated on the basis of actual days elapsed in a 365-day year (366 days in a leap year). In no event shall Borrower be obligated to pay interest at a rate in excess of the highest rate permitted by applicable law from time to time in effect.

The occurrence of any of the following shall, at Lender's option, (1) make all sums of interest, principal and any other amounts owing under any Loan Documents immediately due and payable without notice of default (other than notice specifically provided for herein or in the Deed of Trust), intention to accelerate, acceleration, presentment or demand for payment, protest or notice of nonpayment or dishonor or any other notices or demands; and (2) give Lender the right to exercise any other right or remedy provided by contract or applicable law:

(a)    Borrower shall fail to make any payment of principal or interest when due under this Note or to pay any fees or other charges when due under any Loan Document (defined below) and such failure shall continue for a period of ten (10) days following the delivery of written notice thereof by or on behalf of Lender to Borrower.

(b)    Borrower or any other Person shall fail to perform any other obligation under this Note or any contract, instrument, addendum or document evidencing, securing or executed in connection with the indebtedness evidenced by this Note (including this Note, each a "Loan Document") and such failure shall continue for a period of thirty (30) days following the delivery of written notice thereof by or on behalf of Lender to Borrower.

COPY

H:\Empl\Agreements\Santa Clara\Commercial loan note.doc

(c)     Any representation or warranty made, or financial statement, certificate or other document provided, by Borrower or any guarantor ("Guarantor") of obligations of Borrower to Lender ("Obligations") shall prove to have been false or misleading.

(d)     Borrower or any Guarantor shall fail to pay its debts generally as they become due or shall file any petition or action for relief under any bankruptcy, insolvency, reorganization, moratorium, creditor composition law, or any other law for the relief of or relating to debtors; an involuntary petition shall be filed under any bankruptcy law against Borrower or any Guarantor, or a custodian, receiver, trustee, assignee for the benefit or creditors, or other similar official, shall be appointed to take possession, custody or control of the properties of Borrower or any Guarantor; or the death, incapacity, dissolution or termination of the business of Borrower or any Guarantor.

Any notice required or permitted hereunder shall be given in writing and shall be deemed sufficiently given if delivered in accordance with the provisions for notice set forth in the Deed of Trust.  Lender has the right at its sole option to continue to accept interest and/or principal payments due under the Loan Documents after default, and such acceptance shall not constitute a waiver of said default or an extension of the maturity date unless Lender agrees otherwise in writing.

## LIMITATION ON RECOURSE

Subject to the last sentence of this paragraph, Borrower shall be liable upon the indebtedness evidenced by this Note, all sums to accrue or become payable hereon, all amounts covenanted to be paid by Borrower under any instrument securing payment of this Note and all of the covenants and agreements of Borrower under any instrument securing payment of this Note to the full extent (but only to the extent) of all of the property which constitutes security for the payment of this Note (collectively, the "Property").  If default occurs in the timely and proper payment of all or any portion of such indebtedness, sums or amounts, or in the timely performance of any of such covenants, any judicial proceedings brought by Lender against Borrower shall be limited to the preservation, enforcement and foreclosure of the liens, mortgages, assignments, rights and security interests now or at any time hereafter securing the payment hereof, and no attachment, execution or other writ or process shall be sought, issued or levied upon any assets, properties or funds of Borrower, other than the Property described in any instrument securing payment of this Note.  If there is a foreclosure of any such liens, mortgages, assignments, rights and security interests securing the payment hereof by private power of sale or otherwise, no judgment for any deficiency upon such indebtedness, sums and amounts shall be sought or obtained by Lender against Borrower. Notwithstanding the foregoing provisions of this paragraph, Borrower shall be fully liable (a) for failure to pay taxes, assessments or other charges which can create liens on any portion of the Property that are payable or applicable prior to any foreclosure under the instrument covering the same (to the full extent of any such taxes, assessments or other charges), (b) for failure to pay any valid mechanic's liens, materialmen's liens or other liens (whether or not similar) arising prior to any sale or foreclosure which could create liens on any portion of the Property (to the full extent of the amount rightfully claimed by the lien claimant), (c) for fraud or misrepresentation made in or in connection with this Note or any instrument securing payment hereof, (d) for the misapplication of (i) proceeds paid prior to any such foreclosure under any insurance policies by reason of damage, loss or destruction to any portion of the Property (to the full extent of such proceeds), or (ii) any proceeds or awards resulting from the condemnation, prior to any such foreclosure, of all or any part of the Property (to the full extent of such proceeds or awards), and (e) for failure prior to such foreclosure to maintain, repair or restore the Property in accordance with any instrument securing payment hereof (to the full extent of the cost of each maintenance, repair or restoration not fully compensated for to Holder by insurance).

## DISPUTE RESOLUTION

(a)     Mandatory Mediation/Arbitration.  Any controversy or claim between or among the parties, their agents, employees and affiliates, including but not limited to those arising out of or relating to this Note or any related agreements or instruments ("Subject Documents"), including without limitation any claim based on or arising from an alleged tort, shall, at the option of any party, and at that party's expense, be submitted to mediation, using either the American Arbitration Association ("AAA") or Judicial Arbitration and Mediation Services, Inc. ("JAMS"), and shall be heard in Santa Clara County, California.  If mediation is not used, or if it is used and it fails to resolve the dispute within 30 days from the date AAA or JAMS is engaged, then the dispute shall be determined by arbitration in accordance with the rules of either JAMS or AAA (at the option of the party initiating the arbitration), notwithstanding any other choice of law provision in the Subject Documents.  All statutes of limitations or any waivers contained herein which would otherwise be applicable shall apply to any arbitration proceeding under this subparagraph (a).  The parties agree that related arbitration proceedings may be consolidated. The arbitrator shall prepare written reasons for the award.  Judgment upon the award rendered may be entered in any court having jurisdiction.  This subparagraph (a) shall apply only if, at the time of the proposed submission to AAA or JAMS, none of the obligations to Lender described in or covered by any of the Subject Documents are secured by real property collateral or, if so secured, all parties consent to such submission.

(b)     Jury Waiver/Judicial Reference.  If the controversy or claim is not submitted to arbitration as provided and limited in subparagraph (a), but becomes the subject of a judicial action, each party hereby waives its respective right to trial by jury of the controversy or claim.  In addition, any party may elect to have all decisions of fact and law determined by a referee appointed by the court in accordance with applicable state reference procedures.  The party requesting the reference procedure shall ask AAA or JAMS to provide a panel of retired judges and the court shall select the referee from the designated panel.  The referee shall prepare written

H:\Amy0\Agreement\Santa Clara\Commercial loan note.doc

findings of fact and conclusions of law. Judgment upon the award rendered shall be entered in the court in which such proceeding was commenced.

(c) **Provisional Remedies, Self Help, and Foreclosure.** No provision of, or the exercise of any rights under, subparagraph(a), shall limit the right of any party to exercise self help remedies such as setoff, to foreclose against any real or personal property collateral, or to obtain provisional or ancillary remedies such as injunctive relief or the appointment of a receiver from a court having jurisdiction before, during or after the pendency of any mediation or arbitration. At Lender's option, foreclosure under a deed of trust or mortgage may be accomplished either by exercise of power of sale under the deed of trust or mortgage, or by judicial foreclosure. The institution and maintenance of an action for judicial relief or pursuit of provisional or ancillary remedies or exercise of self help remedies shall not constitute a waiver of the right of any party, including the plaintiff, to submit the controversy or claim to mediation or arbitration.

To the extent any provision of the dispute resolution clause is different than the terms of this Note, the terms of this dispute resolution clause shall prevail.

Lender reserves the right to sell, assign, transfer, negotiate or grant participations in all or any part of, or any interest in, Lender's rights and obligations under the Loan Documents. In that connection, Lender may disclose all documents and information which Lender now or hereafter may have relating to this credit facility, Borrower, or any Guarantor or their business.

No failure or delay on the part of Lender in exercising any power, right or privilege under any Loan Document shall operate as a waiver thereof, and no single or partial exercise of any such power, right or privilege shall preclude any further exercise thereof or the exercise of any other power, right or privilege.

Borrower shall reimburse Lender for all costs and expenses, including without limitation reasonable attorneys' fees and disbursements (and fees and disbursements of Lender's in-house counsel) expended or incurred by Lender in any arbitration, mediation, judicial reference, legal action or otherwise in connection with (a) the negotiation, preparation, amendment, interpretation and enforcement of the Loan Documents, including without limitation during any workout, attempted workout, and/or in connection with the rendering of legal advice as to Lender's rights, remedies and obligations under the Loan Documents, (b) collecting any sum which becomes due Lender under any Loan Document, (c) any proceeding for declaratory relief, any counterclaim to any proceeding, or any appeal, or (d) the protection, preservation or enforcement of any rights of Lender. For the purposes of this section, attorneys' fees shall include, without limitation, fees incurred in connection with the following: (1) contempt proceedings; (2) discovery; (3) any motion, proceeding or other activity of any kind in connection with a Bankruptcy proceeding or case arising out of or relating to any petition under Title 11 of the United States Code, as the same shall be in effect from time to time, or any similar law; (4) garnishment, levy, and debtor and third party examinations; and (5) post-judgment motions and proceedings of any kind, including without limitation any activity taken to collect or enforce any judgment.

This Note shall be governed by, and construed in accordance with, the laws of the State of California.

All terms and conditions set forth in the Leasehold Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing, dated as of even date herewith, executed and delivered by Borrower, as Trustor, for the benefit of Lender, as Beneficiary are incorporated by this reference.

B&B MANAGEMENT GROUP, LLC,
a California limited liability company

By: _____

Name: Jerome Bellach

Title: General Manager

DOCUMENT: 15299951  Titles:3 / ges: 13

Fees.... 98.00
Taxes..
Copies..
AMT PAID 98.00

BRENDA DAVIS                    ROE # 000
SANTA CLARA COUNTY RECORDER     7/03/2000
Recorded at the request of      1:39 PM
Commonwealth Land Title

RECORDING REQUESTED BY,

AND WHEN RECORDED RETURN TO:

Apria Healthcare, Inc.
3560 Hyland Avenue
Costa Mesa, California 92626

Attention: Raoul Smyth, Esquire

INSTRUCTIONS TO COUNTY RECORDER:

Index this document as
(1) a deed of trust and
(2) a fixture filing

*L9691085*

LEASEHOLD DEED OF TRUST, ASSIGNMENT OF RENTS,
SECURITY AGREEMENT AND FINANCING STATEMENT (FIXTURE FILING)

*Trustor*

This Leasehold Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing ("Deed of Trust"), dated as of June 30, 2000, is executed by B&B MANAGEMENT GROUP, LLC, a California limited liability company whose address is 6815 Redwood Drive, Cotati, California 94931, in favor of Commonwealth Land Title Company ("Trustee"), as trustee, for the benefit of APRIA HEALTHCARE, INC., a Delaware corporation ("Beneficiary"), as beneficiary, whose address is Apria Healthcare, Inc., 3560 Hyland Avenue, Costa Mesa, California 92626, Attention: Raoul Smyth, Esquire. Each capitalized term used and not otherwise defined in this Deed of Trust shall have the meaning given such term in the "Note" (as defined below).

ARTICLE 1
GRANT OF SECURITY

1.1  Grant of Security.  Trustor, in consideration of the indebtedness secured by this Deed of Trust, irrevocably grants, transfers and assigns to Trustee, IN TRUST, WITH POWER OF SALE, AND RIGHT OF ENTRY AND POSSESSION, for the benefit and security of Beneficiary, all Trustor's existing and future rights, titles, interests, estates, powers and privileges in or to the following (collectively, the "Property"):

(a)  That certain leasehold estate, created by a lease ("Lease") dated April 1, 1968, between the ANNUITY BOARD OF THE SOUTHERN BAPTIST CONVENTION ("Lessor"), as lessor, and CONSOLIDATED FOODS CORPORATION ("Lessee"), of that certain real property ("Land") in the City of Santa Clara, County of Santa Clara, State of California, more particularly described on the attached Exhibit "A" which Lease or a memorandum thereof was recorded on March 25, 1968, in book 8065, page 385, of Official Records of Santa Clara County, California, and which Leasehold has previously been assigned by Consolidated Foods Corporation to Abbey Medical/Abbey Rents, Inc., a Delaware corporation by Assignment and Assumption Agreement dated December 31, 1978, and by Abbey Medical/Abbey Rents, Inc. to Abbey Medical, Inc., a Delaware corporation by Assignment and Assumption Agreement dated June 15, 1984; and by Abbey Medical, Inc. to Beneficiary by Assignment of Lease dated August 31, 1995;

(b)  All fixtures (including without limitation goods that are or become so related to the Land or Improvements that an interest in them arises under real estate law) and any additions or replacements (collectively, the "Fixtures") now or hereafter located on, attached to, installed in or used in connection with the Land (the "Improvements");

(c)  All rights, rights-of-way, easements, licenses, profits, privileges, tenements, hereditaments and appurtenances now owned or hereafter acquired by Trustor and used in connection with the Land and the Improvements or as a means of access to either or both, including, without limitation, all rights under any trackage agreement;

(d)  All of Trustor's existing and future right, title and interest in and to any land within the right-of-way of any open or proposed street adjoining the Land, and any and all sidewalks, alleys and strips and gores of land adjacent to or used in connection with the Land and Improvements;

(e)  All of Trustor's existing and future rights (including, without limitation, royalty and leasehold rights) oil, gas and other mineral rights in or relating to the Land;

(f)  All existing and future subleases relating to the Land and Improvements or any interest in them (the "Assigned Leases") including without limitation all deposits, advance rentals and other similar payments similar but not including the Rents, as defined and separately assigned in Article 4;

H:\Smyth\Agreements\Santa Clara\Leasehold Deed of Trust.doc

**EXHIBIT B**

(g)    All options to purchase or lease the Land or Improvements or any interest in them (and any greater estate in the Land or Improvements and acquired by exercise of such options);

(h)    All Trustor's other existing or future estates, easements, licenses, interests, rights, titles, homestead or other claims or demands, both in law and in equity in the Land and Improvements, including, without limitation, (1) all awards made for the partial or complete taking by eminent domain, or by any proceeding or purchase in lieu of eminent domain, of the Property, and (2) all proceeds of any insurance covering the Property.

Notwithstanding the foregoing, the liens and security interests herein granted do not extend to the Demised Premises (as such term is used in the Lease) or any part thereof, but only to Trustor's leasehold interest therein, and the term "Property" shall not include, and any security interest granted hereunder shall not extend to, any inventory or personal property not attached to the Improvements.

## ARTICLE 2
## SECURED OBLIGATIONS

2.1  Secured Obligations.  This Deed of Trust, and the lien it creates, is made for the purpose of securing the following obligations (collectively, the "Secured Obligations"):

(a)    Payment of all indebtedness and performance of all other obligations evidenced by that certain Commercial Promissory Note Secured by Deed of Trust ("Note") dated as of even date herewith, made by Trustor to the order of Beneficiary, in the original principal amount of SIX HUNDRED NINETY THOUSAND DOLLARS ($690,000.00), together with interest according to the terms of the Note;

(b)    the payment of all indebtedness and performance of all other obligations of Trustor to Beneficiary contained in this Deed of Trust;

(c)    the payment of all indebtedness and performance of all other obligations which the then record owner of the Property may agree to pay and perform for the benefit of Beneficiary (including future advances to Trustor), and which are contained in a document which recites that it is secured by this Deed of Trust;

(d)    the payment by Trustor of all amounts advanced by (or on behalf of) Beneficiary or Trustee to improve, protect or preserve the Property or the security of this Deed of Trust, with interest on such amounts as provided in this Deed of Trust;

(e)    the payment and performance of all amendments, modifications, extensions, renewals and replacements of any of the foregoing (including, without limitation, (i) amendments or modifications of the required principal or interest payment dates accelerating or deferring any such payment dates, or (ii) amendments, modifications, extensions or renewals at a different rate of interest), whether or not evidenced by a new or additional promissory note or other document;

(f)    compliance with and performance of each obligation, covenant, and agreement of Trustor arising under or contained in the Lease; and

(g)    payment of charges as allowed by law, when such charges are made for any beneficiary statement or other statement regarding the Secured Obligations.

## ARTICLE 3
## COVENANTS

3.1  Payment of Secured Obligations.  Trustor shall pay the Secured Obligations when due.

3.2  Maintenance, Repair, Alterations.

3.2.1  Maintenance, Repair and Alterations: Affirmative Covenants.  Trustor shall:

(a) keep the Property in good condition and repair; (b) complete promptly and in a good and workmanlike manner any Improvement which may be constructed on the Land, and promptly restore in like manner any Improvement which may be damaged or destroyed, and pay when due all claims for labor performed and materials furnished for such construction or restoration; (c) comply with all statutes, laws, ordinances, regulations, orders, rulings, rules, consents, permits, licenses, conditions of approval, and authorizations of any court or governmental or regulatory body having jurisdiction over Borrower, the Property, or Improvements ("Laws and Ordinances"); (d) comply with any condominium or other plan, declaration of covenants, conditions and restrictions, reciprocal easement agreements to which the Property is subject ("CC&R's"), and owners' association articles and bylaws affecting the Property; and exceptions to title acceptable to Beneficiary ("Permitted Exceptions"); (e) keep and maintain abutting grounds, sidewalks, roads, parking and landscape areas in good and neat order and repair; (f) comply with the provisions of any leases constituting part of the Property; (g) obtain and maintain in full force and effect all permits necessary for the use, occupancy and operation of the Property; and (h) do any and all other acts, except as otherwise prohibited or restricted by the Loan Documents, which may be reasonably necessary to protect or preserve the value of the Property and the rights of Trustee and Beneficiary in it.

3.2.2 Maintenance, Repair and Alterations; Negative Covenants. Trustor shall not, except upon the prior written consent of Beneficiary, which shall not be unreasonably withheld or delayed:

(a) remove, demolish or materially alter any of the Improvements, other than to make non-structural repairs in the ordinary course of business which preserve or increase the value of the Property; (b) commit, suffer or permit any act to be done in, upon or to any part of the Property in violation of any Laws and Ordinances, CC&R's, or Permitted Exceptions now or hereafter affecting the Property; (c) commit or permit any waste or deterioration of the Property; (d) take (or fail to take) any action, which would increase the risk of fire or other hazard occurring to or affecting the Property or which would otherwise would impair the security of Beneficiary in the Property; (e) abandon all or any part of the Property or leave the Property unprotected, unguarded, vacant or deserted; or (f) initiate, join in or consent to any change in any zoning ordinance, general plan, specific plan, private restrictive covenant or other public or private restriction limiting the uses which may be made of the Property by Trustor.

3.3 Insurance.

3.3.1 Policies Required. Trustor shall at all times maintain in full force and effect, at Trustor's sole cost and expense, with insurers reasonably satisfactory to Beneficiary, the following policies of insurance in form, substance, and amounts reasonably satisfactory to Beneficiary:

(a) public liability insurance in amounts reasonably required by Beneficiary from time to time;

(b) fire and hazard "all risk" insurance covering 100% of the replacement cost of the Improvements and the Fixtures located on the Land in the event of (i) fire, lightning, windstorm, earthquake, vandalism, malicious mischief, (ii) all other risks normally covered by "all risk" coverage policies in the area where the Property is located, and (iii) loss by flood if the Property is in an area designated as subject to the danger of flood;

(c) worker's compensation insurance and any other insurance required by law in connection with the Property;

(d) property damage insurance in amounts reasonably required by Beneficiary from time to time;

(e) all rental loss insurance and business interruption insurance that Beneficiary reasonably requires (including insurance against income loss during a period of restoration); and

(f) all other insurance reasonably required by Beneficiary from time to time.

No less than 30 days prior to the expiration of each policy, Trustor shall deliver to Beneficiary evidence reasonably satisfactory to Beneficiary of renewal or replacement of such policy. Nothing herein contained shall require Trustor to maintain insurance policies which are not commercially appropriate or generally not maintained by other owners of similar commercial properties in Santa Clara County, California.

3.3.2 Required Policy Provisions. Each policy of insurance required under this Agreement shall:

(a) be subject to the obligation that it shall not be cancelled or materially changed without at least thirty (30) days' prior written notice to Beneficiary;

(b) be primary insurance without right of contribution;

(c) (for casualty insurance) include a "Lender's Loss Payable Endorsement" (Form 438BFU, or its equivalent) in form and substance satisfactory to Beneficiary, showing Beneficiary as "Lender", or (for liability insurance) shall name Beneficiary as an additional insured;

(d) include only deductible amounts to which Beneficiary has previously consented in writing;

(e) contain an agreed value clause sufficient to eliminate any risk of co-insurance, if it insures against damage to the Improvements;

(f) be in form, substance, amount, and issued by companies (which must be rated Class A-VII or better by Best's Insurance Reports) approved by Beneficiary; and

(g) meet such other requirements as Beneficiary requires.

3.3.3 Claims. Trustor shall give Beneficiary immediate notice of any casualty to any portion of the Property, whether or not covered by insurance. If covered, Trustor authorizes Beneficiary, if Beneficiary so elects, to make proof of loss, and to commence, to appear in, defend and prosecute any claim or action arising from any applicable policy and to settle, adjust or compromise any claim under any such policy. Trustor irrevocably

appoints Beneficiary its true and lawful attorney-in-fact for all such purposes. Trustor shall not settle, adjust or compromise any such claim without the prior written approval of Beneficiary, which approval shall not be unreasonably withheld or delayed.

3.3.4  Delivery of Proceeds to Beneficiary.  If, regardless of any "lender's loss payable endorsement" requirement set forth above, the proceeds of any casualty insurance policy described above are paid to Trustor, Trustor shall deliver such proceeds to Beneficiary immediately upon receipt.

3.3.5  Application of Casualty Insurance Proceeds.  Any proceeds collected (the "Proceeds") under any casualty insurance policy described in this Deed of Trust shall be either applied to reduce the Loan balance or disbursed to Trustor as provided below:

(a)     Within sixty (60) days of such damage, destruction, or taking, Trustor shall present to Beneficiary a restoration plan satisfactory to Beneficiary which includes cost estimates and schedules; and

(b)     Within three (3) months of such damage, destruction, or taking, Trustor and a contractor satisfactory to Beneficiary shall enter into a fixed price or guaranteed maximum price contract satisfactory to Beneficiary, providing for complete restoration in accordance with such restoration plan; and

(c)     To the extent the proceeds are insufficient to accomplish the restoration Trustor shall pay the amount of such shortfall.

If Trustor complies with this Paragraph, Beneficiary shall disburse to such contractor(s), on Trustor's request, in accordance with the restoration contract and Beneficiary's customary disbursement procedures. Any Proceeds not required or utilized in connection with the restoration of the casualty damage shall be applied to the payment of the indebtedness secured by this Deed of Trust.

3.3.6  Restoration.  Nothing in this Section 3 shall be construed to excuse Trustor from repairing and restoring all damage to the Property in accordance with other Loan Document provisions, regardless of whether insurance proceeds are available or sufficient or are disbursed and/or released to Trustor.

3.3.7  Assignment of Policies.  If this Deed of Trust is foreclosed or other transfer of title or assignment of the Property is made in satisfaction of all or part of the Secured Obligations, then all right, title and interest of Trustor in and to all policies of insurance required by Section 3.3.1 above and all unearned premiums paid on them shall, without further act, pass to the purchaser or grantee of the Property.

3.3.8  Waiver of Subrogation.  Trustor waives all right to recover against Beneficiary (or any officer, employee, agent or representative of Beneficiary) for any loss incurred by Trustor from any cause insured against or required by any Loan Document to be insured against; provided, however, that this waiver of subrogation shall not apply to any insurance policy if such policy's coverage would be materially reduced or impaired as a result. Trustor shall obtain only policies which permit this waiver of subrogation.

3.4  Condemnation and Other Awards.  Upon learning of the actual or threatened condemnation or other taking for public or quasi-public use of all or any part of the Property, Trustor shall immediately notify Beneficiary and Trustee. Trustor shall take all actions reasonably required by Beneficiary or Trustee in connection with such condemnation or other taking to defend and protect the interests of Trustor, Beneficiary and/or Trustee in the Property. At Beneficiary's option, Beneficiary or Trustor may be the named party in such proceeding. Regardless of the adequacy of its security, Beneficiary shall be entitled to participate in, control, and be represented by counsel of its choice in such proceeding. All condemnation proceeds shall first be applied to reimburse Beneficiary and Trustee for all their costs and expenses, including reasonable attorneys' fees, incurred in connection with the collection of such award or settlement. The balance of such award or settlement shall be applied by Beneficiary against the Secured Obligations in such order as Beneficiary may determine; provided, however, that if Beneficiary elects, in the exercise of its sole and absolute discretion, to waive the Event of Default described in Section 5.1.6, below, the balance of any compensation, awards, damages and other amounts received by Beneficiary shall be (i) disbursed to Trustor for repairs and reconstruction consistent with and in accordance with the procedures and other provisions, and subject to the conditions precedent, set forth in Section 3.3, above, for the application of casualty insurance proceeds (including, without limitation, requirements with respect to Trustor's deposit of additional funds and/or (ii) applied by Beneficiary against the Secured Obligations in such order as Beneficiary may determine. Application or release of condemnation proceeds pursuant to this Deed of Trust shall not cure or waive any Event of Default or notice of default under this Deed of Trust or invalidate any act done pursuant to such notice.

3.5  Taxes and Impositions (Impounds).  Trustor shall pay, prior to delinquency, all of the following (collectively, the "Impositions"):

(a)     All general and special real property taxes and assessments imposed on the Property; and

(b)     All other taxes and assessments and charges assessed on the Property (or on the owner and/or operator of the Property) which create or may create a lien on the Property (or on any personal property or fixture used in connection with the Property); including, without limitation, non-governmental levies and assessments under applicable CC&R's; and

(c)    All business taxes; and

(d)    All license fees, taxes and assessments imposed on Beneficiary (other than Beneficiary's income or franchise taxes) which are measured by or based upon (in whole or in part) the amount of the Secured Obligations.

If permitted by law, Trustor may pay the Imposition in installments (together with any accrued interest). Upon demand by Beneficiary from time to time, Trustor shall deliver to Beneficiary, within 30 days following the due date of any Imposition, evidence of payment reasonably satisfactory to Beneficiary. In addition, upon demand by Beneficiary, at Trustor's expense, from time to time, Trustor shall furnish to Beneficiary a tax reporting service for the Property of a type and duration, and with a company, reasonably satisfactory to Beneficiary.

3.6  Utilities.  Trustor shall promptly pay all gas, electricity, water, sewer and other utility charges incurred for the benefit of the Property or which may become a lien against the Property; and all other similar public or private assessments and charges relating to the Property, regardless of whether or not any such charge is or may become a lien on the Property.

3.7  Liens; Non-Permitted Exceptions.  Trustor shall not cause, incur, or permit to exist any lien, encumbrance or charge ("Non-Permitted Exceptions") upon all or any part of the Property or any interest in the Property other than Permitted Exceptions. Trustor shall pay and promptly discharge, at Trustor's sole cost and expense, all such Non-Permitted Exceptions. If Trustor fails to do so, then Beneficiary may, but shall not be obligated to, discharge them, without notice to or demand on Trustor, and without inquiring into the validity of such Non-Permitted Exceptions or the existence of any defense or offset to them. Beneficiary may discharge Non-Permitted Exceptions either by (i) paying the amount claimed to be due, or (ii) procuring their discharge by depositing in a court a bond or the amount claimed or otherwise giving security for such claim, or (iii) in any other manner permitted or required by law. Trustor shall, immediately upon demand by Beneficiary, pay Beneficiary's costs and expenses incurred in connection with such discharge, together with interest on such costs from the date of such expenditure until paid at the default rate of interest ("Default Rate") in the Note.

3.8  Sale or Lease of Property; Due on Sale Clause.  Except to the extent provided below, Trustor shall not sell or otherwise transfer all or any part of the Property or any interest in it without the prior written consent of Beneficiary, which consent may be granted or withheld in Beneficiary's sole and absolute discretion. Notwithstanding the foregoing, nothing herein shall preclude Trustor from entering into a lease with BELLACH'S LEATHER FOR LIVING, INC., or a sublease of less than 30% of the Property, or with anyone else whose use is not substantially more hazardous than Trustor's use of the Property as a retail furniture show room and store. However, all leases of any part of the Property must be submitted to Beneficiary for approval prior to execution. Transfers requiring Beneficiary's prior written consent shall include, without limitation, the following:

(a)    Involuntary transfers and transfers by operation of law;

(b)    Liens, encumbrances and assignments as security for obligations, whether voluntary or involuntary; and

(c)    The sale, issuance, disposition, encumbering or other transfer of all or any part of: (i) any class of the outstanding capital stock in, or (ii) the beneficial interest of, Trustor or any partner of Trustor or any partner of such partner, whether voluntary or involuntary.

No sale, lease or other transfer shall relieve Trustor from primary liability for its obligations under the Note and the other Loan Documents or relieve any guarantor from any liability under any guaranty. Upon any such transfer to which Beneficiary does not consent, Beneficiary at its option may, without prior notice, declare all Secured Obligations immediately due and payable without presentment, demand, protest or further notice of any kind, and may exercise all rights and remedies provided in this Deed of Trust.

3.9  Inspections.  Trustor authorizes Beneficiary and its agents, representatives and employees, upon at least 24 hours' notice or without notice in the event of an emergency, to enter at any time upon any part of the Property for the purpose of inspecting it and performing any of the acts Beneficiary is authorized to perform under this Deed of Trust or any of the other Loan Documents.

3.10  Defense of Actions.  Trustor shall notify Beneficiary of any action or proceeding purporting to affect (i) the security of this Deed of Trust, (ii) any of the other Loan Documents, (iii) all or any part of the Property or any interest in it, (iv) any additional or other security for the Secured Obligations, or (v) the interests, rights, powers or duties of Beneficiary or Trustee under this Deed of Trust. Trustor, at no cost or expense to Beneficiary or Trustee, shall appear in and defend the same. If Beneficiary or Trustee elects to become or is made a party to such action or proceeding, Trustor shall indemnify, defend and hold Trustee and Beneficiary harmless from all related liability, damage, cost and expense incurred by either Trustee or Beneficiary (including, without limitation, reasonable attorneys' fees and expenses consistent with Section 3.13 of this Deed of Trust), whether or not such action or proceeding is prosecuted to judgment or decision.

3.11  Protection of Security.  If Trustor fails to make any payment or to do any act required by this Deed of Trust or any of the other Loan Documents, Beneficiary and/or Trustee may do so. Beneficiary or Trustee may decide to do so each in its own discretion, without obligation to do so, without further notice or demand, and

without releasing Trustor in such manner and to such extent as either may reasonably deem necessary to protect the security of this Deed of Trust. In connection with such actions Beneficiary and Trustee each have the right, without limitation, but not the obligation: (i) to enter upon and take possession of the Property; (ii) to make additions, alterations, repairs and improvements to the Property which in the judgment of either may be necessary or proper to keep the Property in good condition and repair; (iii) to appear and participate in any action or proceeding affecting or which may affect the security of this Deed of Trust or the rights or powers of Beneficiary or Trustee; (iv) to pay, purchase, contest or compromise any encumbrance, claim, charge, lien or debt which in the judgment of either may affect the security of this Deed of Trust or appear to be prior or superior to this Deed of Trust; and (v) in exercising such powers, to pay all necessary or appropriate costs and expenses and employ necessary or desirable consultants.

3.12 **Beneficiary's Powers.** If Trustor fails to pay any sum, other than principal and interest on the Secured Obligations, or to perform or comply with any other obligation required by any Loan Document, Beneficiary at its election may pay such sum or comply with such obligation. Without affecting the liability of Trustor or any other person liable for the payment of any Secured Obligation, and without affecting the lien or charge of this Deed of Trust, Beneficiary may, from time to time and without notice do any of the following: (i) release any person so liable, (ii) extend the maturity or alter any of the terms of any such obligation (provided, however, that the consent of Trustor shall be required for extension or alteration of any unpaid obligation of Trustor to Beneficiary), (iii) waive any provision of this Deed of Trust or grant other indulgences, (iv) release or reconvey, or cause to be released or reconveyed at any time at Beneficiary's option all or any part of the Property, (v) take or release any other or additional security for any Secured Obligation, or (vi) make arrangements with debtors in relation to the Secured Obligations. Waiver by Beneficiary of any right or remedy as to any transaction or occurrence shall not be deemed to be a waiver of any future transaction or occurrence. By accepting full or partial payment or performance of any Secured Obligation after due or after the filing of a notice of default and election to sell, Beneficiary shall not have thereby waived its right to (x) require prompt payment and performance in full, when due, of all other Secured Obligations, (y) declare a default for failure so to pay or perform, or (z) proceed with the sale under any notice of default and election to sell previously given by Beneficiary, or as to any unpaid balance of the indebtedness secured by this Deed of Trust.

3.13 **Reimbursement of Costs, Fees and Expenses; Secured by Deed of Trust.** Trustor shall pay, on demand, to the maximum allowable under applicable law, all costs, fees, expenses, advances, charges, losses and liabilities paid or incurred by Beneficiary and/or Trustee in administering this Deed of Trust, the collection of the Secured Obligations, and Beneficiary's or Trustee's exercise of any right, power, privilege or remedy under this Deed of Trust. Such amounts include, without limitation (a) foreclosure fees, trustee's fees and expenses, receiver's fees and expenses and trustee's sale guaranty premiums, (b) costs and fees paid or incurred by Beneficiary and/or Trustee and/or any receiver appointed under this Deed of Trust in connection with the custody, operation, use, maintenance, management, protection, preservation, collection, appraisal, sale or other liquidation of the Property, (c) advances made by Beneficiary and/or Trustee to complete or partially construct all or part of any Improvements which may have been commenced on the Land, or otherwise to protect the security of this Deed of Trust, (d) costs of evidence of title, costs of surveys and costs of appraisals, and (e) costs resulting from Trustor's failure to perform any of the provisions of this Deed of Trust. Fees, costs, and expenses of attorneys include the reasonable fees and disbursements of Beneficiary's outside and staff counsel and of any experts and agents, and including such fees incurred in the exercise of any remedy (with or without litigation), in any proceeding for the collection of the Secured Obligations, in any foreclosure on any of the Property, in protecting the lien or priority of the security, or in any litigation or controversy connected with the Secured Obligations, including any bankruptcy, receivership, injunction or other proceeding, or any appeal from or petition for review of any such proceeding. Reasonable counsel fees shall include fees incurred not only in enforcing the debt in any bankruptcy or receivership proceeding, but also any fees incurred in participating in the bankruptcy or receivership proceedings generally. Such sums shall be secured by this Deed of Trust and shall bear interest from the date of expenditure until paid at the default interest rate recited in the Note.

3.14 **Lease.** Trustor shall perform or cause to be performed each and every obligation of the Lessee under the Lease on or before the date the same shall become performable under the terms of the Lease.

**ARTICLE 4**
**ASSIGNMENT OF RENTS, ISSUES AND PROFITS**

4.1 **Assignment of Rents, Issues and Profits.** Trustor absolutely, unconditionally, and irrevocably assigns and transfers to Beneficiary all of its right, title and interest in and to all rents, issues, profits, royalties, income and other proceeds and similar benefits derived from the Property (collectively, the "Rents"), and gives to Beneficiary the right, power and authority to collect such Rents. Trustor irrevocably appoints Beneficiary its true and lawful attorney-in-fact, at the option of Beneficiary, at any time and from time to time, to demand, receive and enforce payment, to give receipts, releases and satisfactions, and to sue; in its name or in Trustor's name for all Rents, and to apply them to the Secured Obligations. However, Trustor shall have a license to collect and retain Rents (but not more than one month in advance unless the written approval of Beneficiary has first been obtained) so long as an Event of Default shall not have occurred and be continuing. The assignment of the Rents in this Article 4 is intended to be an absolute assignment from Trustor to Beneficiary and not merely the passing of a security interest.

4.2 **Collection Upon Default.** Upon the occurrence of an Event of Default, Trustor's license to collect the Rents shall automatically terminate. Upon such termination, Beneficiary may, at any time without notice, either in person, by agent or by a receiver appointed by a court, and without regard to the adequacy of any security for the Secured Obligations, do any of the following: (i) enter upon and take possession of all or any part of the Property; (ii) with or without taking possession of the Property in its own name, sue for or otherwise collect such

Rents (including those past due and unpaid, and all prepaid Rents and all other security or other deposits paid by tenants to Trustor); and (iii) apply the Rents (less costs and expenses of operation and collection, including, without limitation, attorneys' fees, whether or not suit is brought or prosecuted to judgment) to any Secured Obligation, and in such order as Beneficiary may determine even if payment or performance of said Secured Obligation may not then be due. Trustor agrees that, upon the occurrence of any Event of Default, Trustor shall promptly deliver all Rents and security deposits to Beneficiary. The collection of Rents, or the entering and taking possession of the Property, or the application of Rents as provided above, shall not (a) cure or waive any Event of Default or notice of default under this Deed of Trust, (b) invalidate any act performed in response to such Event of Default or pursuant to such notice of default, or (c) cause Beneficiary to be deemed a mortgagee-in-possession of all or any part of the Property.

4.3 <u>Assigned Leases</u>. Trustor agrees, with respect to each of the Assigned Leases as follows:

4.3.1 Trustor shall promptly perform all of Trustor's obligations as landlord under each Assigned Lease and shall immediately notify Beneficiary in writing of any notice of default received by Trustor from the tenant. At Beneficiary's request, Trustor will have tenants execute estoppel certificates and subordination agreements acceptable to Beneficiary.

4.3.2 Trustor shall diligently enforce the performance of all of the obligations of the tenant under each Assigned Lease, shall not waive any default or waive, release or discharge any such tenant of or from any such obligation; and shall not cancel, terminate or modify any Assigned Lease without Beneficiary's prior written consent.

4.3.3 Trustor hereby represents and warrants to Beneficiary, with respect to each Assigned Lease that is presently in effect (collectively, the "Current Assigned Leases"), (a) that Trustor has delivered to Beneficiary a true and complete copy of each Current Assigned Lease, together with all amendments, modifications and supplements thereto; (b) that Trustor has not accepted any payment of rent (or other charge) under any Current Assigned Lease more than one month in advance; and (c) that, to the best of each Trustor's knowledge, no material default by Trustor or any other person under any Current Assigned Lease remains uncured.

4.4 <u>Further Assignments</u>. Upon Beneficiary's demand from time to time, Trustor shall execute and deliver to Beneficiary recordable assignments of Trustor's interest in any and all leases, subleases, contracts, rights, licenses and permits now or hereafter affecting all or any part of the Property. Such assignments shall be made by instruments in form and substance satisfactory to Beneficiary; provided, however, that no such assignment shall be construed as imposing upon Beneficiary any obligation with respect thereto. Beneficiary may, at its option, exercise its rights under this Deed of Trust or any such specific assignment and such exercise shall not constitute a waiver of any right under this Deed of Trust or any such specific assignment.

### ARTICLE 5
### REMEDIES UPON DEFAULT

5.1 <u>Events of Default</u>. Subject to the applicable notice and cure provisions contained in the Note, the occurrence of any of the following events or conditions shall constitute an event of default ("Event of Default") under this Deed of Trust:

5.1.1 Trustor fails to pay any amount owing under this Deed of Trust when due; or

5.1.2 Trustor fails to pay any taxes, insurance premiums, assessments, or rents required under this Deed of Trust; or

5.1.3 Trustor fails to observe or perform any other obligation contained in this Deed of Trust; or

5.1.4 The occurrence of an "Event of Default" under the Note; or

5.1.5 A default under any other document or agreement secured by this Deed of Trust, subject to any applicable cure period stated in such document or agreement; or

5.1.6 A default under any unsecured Hazardous Materials and Environmental Indemnity Agreement executed by Trustor and/or any other party in connection with the loan evidenced by the Note.

5.1.7 All or any portion of the Improvements are destroyed by fire or other casualty and Trustor fails to satisfy all of the restoration conditions within the time periods specified in Section 3.3 of this Deed of Trust; or

5.1.8 All or any material part of the Land or Improvements is condemned, taken in eminent domain, seized or appropriated by any governmental or quasi-governmental agency or entity.

With the exception of Events of Default relating to the payment of a sum of money and those which may also constitute a default under the Lease, no Event of Default shall entitle Beneficiary to exercise any remedy for the Event of Default unless Trustor shall first have been given written notice thereof and a period of thirty (30) days within which to cure the same.

5.2 <u>Acceleration Upon Default; Additional Remedies.</u>  Upon the occurrence of an Event of Default, Beneficiary may, at its option, terminate its obligations under the Loan Documents and declare all Secured Obligations to be immediately due and payable without any presentment, demand, protest or further notice of any kind; and whether or not Beneficiary exercises said option to accelerate, Beneficiary may:

5.2.1  Either in person or by agent, with or without bringing any action or proceeding, or by a receiver appointed by a court and without regard to the adequacy of its security,

(i)  enter upon and take possession of all or part of the Property, in its own name or in the name of Trustee,

(ii)  conduct environmental assessments and surveys and do any other acts which it deems necessary or desirable to preserve the value, marketability or rentability of all or part of the Property or interest in the Property or increase the Property's income, or protect the security of this Deed of Trust, and

(iii)  with or without taking possession of the Property, sue for or otherwise collect the Rents, including those past due and unpaid, and

(iv)  apply the Rents (less costs and expenses of operation and collection including attorneys' fees) to any Secured Obligations, all in such order as Beneficiary may determine.

The entering and taking possession of the Property, the collection of such Rents and their application shall not cure or waive any Event of Default or notice of default or invalidate any act done in response to them. Regardless of whether possession of the Property or the collection, receipt and application of any of the Rents is by Trustee, Beneficiary or a receiver, the Trustee or Beneficiary shall be entitled to exercise every right provided for in any of the Loan Documents or by law upon occurrence of any Event of Default, including the right to exercise the power of sale;

5.2.2  Commence an action to foreclose this Deed of Trust, appoint a receiver, or specifically enforce any of the covenants contained in this Deed of Trust;

5.2.3  Deliver to Trustee a written declaration of default and demand for sale, and a written notice of default and election to sell the Property, which notice Trustee or Beneficiary shall cause to be recorded in the official records of the County in which the Property is located;

5.2.4  Exercise all of the rights and remedies available to a secured party under the California Uniform Commercial Code in such order and in such manner as Beneficiary, in its sole discretion, may determine (including, without limitation, requiring Trustor to assemble the Collateral and make the Collateral available to Beneficiary at a reasonably convenient location); provided, however, that the expenses of retaking, holding, preparing for sale or the like shall include reasonable attorneys' fees and other expenses of Beneficiary and Trustee and shall be additionally secured by this Deed of Trust; and/or

5.2.5  Exercise all other rights and remedies provided in this Deed of Trust, in any Loan Document or other document or agreement now or hereafter securing all or any portion of the Secured Obligations, or provided by law or in equity.

5.3 <u>Foreclosure By Power of Sale.</u>

5.3.1  Should Beneficiary elect to foreclose by exercise of the power of sale contained in this Deed of Trust, Beneficiary shall notify Trustee and shall deposit with Trustee this Deed of Trust and the Note and such receipts and evidence of expenditures made and secured by this Deed of Trust as Trustee may require.

5.3.2  Upon receipt of notice from Beneficiary, Trustee shall cause to be recorded, published and delivered to Trustor such notice of default and election to sell as is then required by law. After such lapse of time, recordation of notice of default, and giving of notice of sale as are required by law, Trustee shall, without demand on Trustor, sell the Property at the time and place of sale fixed by it in said notice of sale, or as lawfully postponed. Trustee may sell the Property either as a whole, or in separate lots or parcels or items and in such order as Beneficiary may direct Trustee so to do, at public auction to the highest bidder for cash in lawful money of the United States payable at the time of sale. Trustee shall deliver to such purchaser or purchasers its good and sufficient deed conveying the property so sold, but without any covenant or warranty, express or implied. The recitals of any matter or fact in such deed shall be conclusive proof of their truthfulness. Any person, including, without limitation, Trustor, or Beneficiary, may purchase at such sale.

5.3.3  After deducting all fees, costs and expenses incurred by Beneficiary or Trustee in connection with such sale, including costs of evidence of title up to the maximum allowable by applicable law, Beneficiary shall apply the proceeds of sale to payment of (i) first, all amounts expended under the terms of this Deed of Trust which are not then repaid, with accrued interest at the Default Rate; (ii) second, all other Secured Obligations; and (iii) the remainder, if any, to the person or persons legally entitled.

5.3.4  Subject to applicable law, Trustee may postpone the sale.

H:\Smyth\Agreements\Santa Clara\Leasehold Deed of Trust.doc

5.3.5 A sale of less than the whole of the Property or any defective or irregular sale made under this Deed of Trust shall not exhaust the power of sale provided for in this Deed of Trust; and subsequent sales may be made until all the Secured Obligations have been satisfied, or the entire Property sold, without defect or irregularity.

5.4 **Appointment of Receiver.** Upon the occurrence of an Event of Default under this Deed of Trust, Beneficiary, as a matter of right and without notice to Trustor or anyone claiming under Trustor, and without regard to the then value of the Property or the interest of Trustor in it, shall have the right to apply to any court having jurisdiction to appoint a receiver or receivers of the Property. Trustor irrevocably consents to such appointment and waives notice of any such application. Any such receiver(s) shall have all the usual powers and duties of receivers in similar cases and all the powers and duties of Beneficiary in case of entry as provided in this Deed of Trust, and shall continue to exercise all such powers until the date of confirmation of sale of the Property, unless such receivership is terminated sooner.

5.5 **Application of Funds After Default.** Except as otherwise provided in this Deed of Trust, upon the occurrence of an Event of Default, Beneficiary may, at any time without notice, apply to any Secured Obligation, in such manner and order as Beneficiary may elect, even if such Secured Obligation may not yet be due, the following: any amounts received and held by Beneficiary to pay insurance premiums or Impositions or as Rents, or as insurance or condemnation proceeds, and all other amounts received by Beneficiary from or on account of Trustor or the Property, or otherwise. The receipt, use or application of any such amounts shall not affect the maturity of any indebtedness secured by this Deed of Trust, any of the rights or powers of Beneficiary or Trustee under the terms of the Loan Documents, or any of the obligations of Trustor or any guarantor under the Loan Documents; or cure or waive any Event of Default or notice of default under any of the Loan Documents; or invalidate any act of Trustee or Beneficiary.

5.6 **Waiver of Lien; Environmental Impairment.** Upon the occurrence of an Event of Default, to the fullest extent allowable by applicable law, Beneficiary shall have the right to (i) waive its lien against any or all of the Property, including fixtures or personal property, to the extent such Property is found to be environmentally impaired in accordance with California Code of Civil Procedure Section 726.5 and (ii) exercise all rights and remedies of an unsecured creditor against Trustor and all of Trustor's assets and property for the recovery of any deficiency and environmental costs, including, but not limited to seeking an attachment order under California Code of Civil Procedure Section 483.010. As between Beneficiary and Trustor, for purposes of California Code of Civil Procedure Section 726.5, Trustor shall have the burden of proving that Trustor or any related party (or any affiliate or agent of Trustor or any related party) was not negligent in permitting the release or threatened release of Hazardous Materials (as defined below). Trustor acknowledges and agrees that, regardless of any term or provision contained in this Deed of Trust or in the Loan Documents, all judgments and awards entered against Trustor pursuant to any of the environmental provisions of the Loan Documents shall be exceptions to any nonrecourse or exculpatory provision of the Loan Documents, and Trustor shall be fully and personally liable for all such judgments and awards entered against Trustor and such liability shall not be limited to the original principal amount of the Secured Obligations. Trustor's obligations under this paragraph shall survive the foreclosure, deed in lieu of foreclosure, release, reconveyance, or any other transfer of the Property or this Deed of Trust. For the purposes of any action brought under this Section, Trustor hereby waives the defense of laches and any applicable statute of limitations.

5.7 **Remedies Not Exclusive.** Trustee and Beneficiary shall each be entitled to enforce payment and performance of any Secured Obligation and to exercise all rights and powers under this Deed of Trust or any other Loan Document or other agreement or any law, even if some or all of the Secured Obligations may be otherwise secured, whether by guaranty, mortgage, deed of trust, pledge, lien, assignment or otherwise. Neither the acceptance nor enforcement (whether by court action or pursuant to the power of sale or other powers herein contained) of this Deed of Trust shall impair Trustee's or Beneficiary's right to realize upon or enforce any other security held by Trustee or Beneficiary. Trustee and Beneficiary shall each be entitled to enforce this Deed of Trust and any other security for the Secured Obligations held by Beneficiary or Trustee in such order and manner as they may in their absolute discretion determine. No remedy conferred upon or reserved to Trustee or Beneficiary is intended to be exclusive of any other remedy in this Deed of Trust, any other agreement, or at law, but each shall be cumulative and in addition to every other remedy available to Beneficiary. Every power or remedy given by any of the Loan Documents to the Trustee or Beneficiary or to which either of them may be otherwise entitled may be exercised, concurrently or independently, from time to time and as often as may be deemed expedient by the Trustee or Beneficiary, and either of them may pursue inconsistent remedies. Trustor may be joined in any action brought by Beneficiary to foreclose under or otherwise enforce this Deed of Trust.

5.8 **Request for Notice.** Trustor requests that a copy of any notice of default and that a copy of any notice of sale under this Deed of Trust be mailed to it at the address set forth in the first paragraph of this Deed of Trust.

## ARTICLE 6
## MISCELLANEOUS

6.1 **Amendments.** This instrument cannot be waived, modified, discharged or terminated except in writing signed by the party against whom enforcement of such changes is sought.

6.2 **Waivers.** Trustor waives, to the extent permitted by law, (i) the benefit of all laws (whenever enacted) providing for any appraisal before sale of any portion of the Property, and (ii) all rights of valuation, appraisal, stay of execution, notice of election to mature or declare due the whole of the Secured Obligations and marshaling in the

event of foreclosure of this Deed of Trust, and (iii) all rights and remedies which Trustor may have under the laws of the State of California regarding the rights and remedies of sureties. However, nothing contained in this Deed of Trust shall be deemed to be a waiver of Trustor's rights under Section 2924, 2924b and 2924c of the California Civil Code, or under Sections 580a, 580d or 726 of the California Code of Civil Procedure.

6.3    Hazardous Materials. Except as disclosed in writing to Beneficiary, Trustor:

(a)    is in full compliance with all Environmental laws and other Laws and Ordinances affecting the Property; and

(b)    knows of no existing or past presence of Hazardous Material in, on, or under the Land and Improvements.

"Environmental Laws" means any law, statute, ordinance, or regulation pertaining to health, industrial hygiene, or the environment, including, without limitation, the laws identified in the definition of "Hazardous Material" below.

"Governmental Authority" means any court or governmental or regulatory body having jurisdiction over Trustor, Obligor, or the Property.

"Hazardous Material" means any hazardous or toxic substance, material or waste regulated by any local Governmental Authority, the State where the Property is located or the United States Government. The term "Hazardous Material" includes, without limitation, any substance, material or waste which is: (i) petroleum or any volatile derivative of petroleum; (ii) asbestos; (iii) designated as a "hazardous substance" pursuant to Section 311 of the Federal Water Pollution Control Act (33 U.S.C. § 1317); (iv) defined as "hazardous waste" pursuant to Section 1004 of the Federal Resource Conservation and Recovery Act of 1976 ("RCRA"), 42 U.S.C. §§ 6901 et seq. (42 U.S.C. § 6903); (v) defined as a "hazardous substance" pursuant to Section 101 of the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended ("CERCLA"), 42 U.S.C. §§ 9601 et seq. and the Superfund Amendments and Reauthorization Act of 1986 ("SARA"); (vi) regulated by the Hazardous Materials Transportation Act, as amended, 49 U.S.C. §§ 1801 et seq.; (vii) any hazardous or toxic substance, material or waste regulated by any local Governmental Authority, the State where the Property is located or the United States Government; and (viii) the substances identified in the following laws of California: any material or substance which is (i) defined as a "hazardous waste" under Sections 25115, 25117 or 25122.7, or listed pursuant to Section 25140 of the California Health and Safety Code, Division 20, Chapter 6.5 (Hazardous Waste Control Law); (ii) defined as a "hazardous substance" under Section 25316 of the California Health and Safety Code, Division 20, Chapter 6.8 (Carpenter-Presley-Tanner Hazardous Substance Account Act); (iii) defined as a "hazardous material," "hazardous substance," or "hazardous waste" under Section 25501 of the California Health and Safety Code, Division 20, Chapter 6.95 (Hazardous Materials Release Response Plans and Inventory) or Section 13050 of the California Water Code; (iv) defined as a "hazardous substance" under Section 25281 of the California Health and Safety Code, Division 20, Chapter 6.7 (Underground Storage of Hazardous Substances); or (v) listed under Article 9 or defined as hazardous or extremely hazardous pursuant to Article 11 of Title 22 of the California Administrative Code, Division 4, Chapter 20.

6.4    Statements by Trustor. Trustor shall, within ten (10) days after notice from Beneficiary, deliver to Beneficiary a written statement setting forth the amounts then unpaid and secured by this Deed of Trust and stating whether any offset or defense exists against such amounts.

6.5    Statements by Beneficiary. For any statement or accounting requested by Trustor or any other entitled person pursuant to Section 2943 or Section 2954 of the California Civil Code or any other applicable law, or for any other document or instrument furnished to Trustor by Beneficiary, Beneficiary may charge:    (i) the maximum amount permitted by law at the time of the request, (ii) if no such maximum, then the greater of Beneficiary's customary charges or the actual cost to Beneficiary.

6.6    Reconveyance by Trustee. Trustee shall reconvey the Property, without warranty, to the person or persons legally entitled to it upon (i) written request of Beneficiary stating that all Secured Obligations have been paid and fully performed, (ii) surrender by Beneficiary of this Deed of Trust and the Note to Trustee for cancellation and retention, and (iii) payment by Trustor of Trustee's fees and the costs and expenses of executing and recording any requested reconveyance. The recitals in any such reconveyance of any matter or fact shall be conclusive proof of their truthfulness. The grantee in any such reconveyance may be described as "the person or persons legally entitled thereto."

6.7    Notices. All notices, demands, approvals and other communications provided for in this Deed of Trust shall be in writing and shall be personally delivered or sent by United States first class mail, certified or registered, return receipt requested, postage prepaid, to the appropriate party at the address set forth in the first paragraph of this Deed of Trust. Addresses for notice may be changed from time to time by written notice to all other parties. All communications shall be deemed given (a) on the date of mailing if deposited in the United States mail in the city where the address of the addressee is situated, or otherwise (b) on the second Business Day after mailed. "Business Day" means any day other than a Saturday, Sunday, or a day on which Beneficiary is closed for business. Nonreceipt of any communication as the result of a change of address of which the sending party was not notified or as the result of a refusal to accept delivery shall be deemed receipt of such communication.

6.8 __Acceptance by Trustee__. Trustee accepts this trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law.

6.9 __Headings__. Article and section headings are included in this Deed of Trust for convenience of reference only and shall not be used in construing this Deed of Trust.

6.10 __Severability__. Every provision of this Deed of Trust is intended to be severable. The illegality, invalidity or unenforceability of any provision of this Deed of Trust shall not in any way affect or impair the remaining provisions of this Deed of Trust, which provisions shall remain binding and enforceable.

6.11 __Subrogation__. To the extent that proceeds of the Note are used, either directly or indirectly, to pay any outstanding lien, charge or prior encumbrance against the Property, Beneficiary shall be subrogated to any and all rights and liens held by any owner or holder of such outstanding liens, charges and prior encumbrances, regardless of whether such liens, charges or encumbrances are released.

6.12 __No Merger of Lease__. Foreclosure of the lien created by this Deed of Trust on the Property shall not destroy or terminate any Assigned Lease or other lease or sublease then existing and affecting all or any portion of the Property, unless the Beneficiary or any purchaser at such foreclosure sale shall so elect. No act by or on behalf of Beneficiary or any such purchaser shall terminate any Assigned Lease or other lease or sublease unless Beneficiary or such purchaser shall give written notice of termination to such tenant or subtenant. If both the lessor's and lessee's estate under any lease which constitutes a part of the Property shall become vested in one owner, this Deed of Trust and its lien shall not be destroyed or terminated by application of the doctrine of merger unless Beneficiary so elects, as evidenced by recording a written declaration so stating. Until Beneficiary so elects, Beneficiary shall continue to have and enjoy all of the rights, powers and privileges of Beneficiary under this Deed of Trust as to the separate estates.

6.13 __Governing Law__. This Deed of Trust shall be governed by, and construed in accordance with, the laws of the State of California.

6.14 __Statute of Limitations__. Trustor hereby waives, to the fullest extent permitted by law, the right to plead, use or assert any statute of limitations as a plea, defense or bar to any Secured Obligation, or to any complaint or other pleading or proceeding filed, instituted or maintained for the purpose of enforcing this Deed of Trust or any rights under it.

6.15 __Interpretation__. In this Deed of Trust the singular shall include the plural and the masculine shall include the feminine and neuter and vice versa, if the context so requires; and the word "person" shall include corporation, partnership or other form of association. Any reference in this Deed of Trust to any document, instrument or agreement creating or evidencing an obligation secured hereby shall include such document, instrument or agreement both as originally executed and as it may from time to time be modified.

6.16 __Trust Irrevocable__. The trust created by this Deed of Trust is irrevocable by Trustor. All amounts payable by Trustor pursuant to this Deed of Trust shall be paid without notice, demand, counterclaim, setoff, deduction or defense and without abatement, suspension, deferment, diminution or reduction. Trustor waive(s) all rights conferred by statute or otherwise to any abatement, suspension, deferment, diminution or reduction of any amount secured by this Deed of Trust and payable by Trustor to Beneficiary or Trustee.

6.17 __Further Assurances__. Trustor agrees to do or cause to be done such further acts and things and to execute and deliver or to cause to be executed and delivered such additional assignments, agreements, powers and instruments, as Beneficiary or Trustee may reasonably require to: (i) correct any defect, error or omission in this Deed of Trust or the execution or acknowledgment of this Deed of Trust, (ii) subject to the lien of this Deed of Trust any of Trustor's properties covered or intended to be covered by this Deed of Trust, (iii) perfect, maintain, and keep valid and effective such lien, (iv) carry into effect the purposes of this Deed of Trust or (v) better assure and confirm to Beneficiary or Trustee their respective rights, powers and remedies under this Deed of Trust.

6.18 __Trustee's Powers__. Upon written request of Beneficiary and presentation of this Deed of Trust and the Note for endorsement, Trustee may (i) reconvey all or any part of the Property, (ii) consent in writing to the making of any map or plat thereof, (iii) join in granting any easement thereon, or (iv) join in any extension agreement, agreement subordinating the lien or charge hereof, or other agreement or instrument relating hereto or to all or any part of the Property. Trustee may take such action at any time, and from time to time, without liability and without notice, and without affecting the personal liability of any person for payment of the indebtedness or the performance of any other Secured Obligation or the effect of this Deed of Trust upon the remainder of the Property.

6.19 __Substitution of Trustee__. Beneficiary may, from time to time, by written instrument executed and acknowledged by Beneficiary and recorded in the county or counties where the Property is located, or by any other procedure permitted by applicable law, substitute a successor or successors for the Trustee under this Deed of Trust.

6.20 __Successors and Assigns__. Subject to Section 3.8, above, this Deed of Trust applies to, inures to the benefit of and binds all parties to this Deed of Trust, their heirs, legatees, devisees, administrators, executors, successors and assigns.

6.21 __Fixture Filing__. The personal property in which Beneficiary has a security interest includes goods which are or are to become fixtures on the Property. This Deed of Trust is intended to serve as a fixture filing

pursuant to the terms of the applicable Uniform Commercial Code. This filing is to be recorded in the real estate records of the county in which the Property is located. In that regard, the following information is provided:

Name of Debtor:          B&B MANAGEMENT GROUP, LLC

Address of Debtor:       6815 Redwood Drive
                         Corati, California 94931

Name of Secured Party:   APRIA HEALTHCARE, INC.

Address of Secured Party: 3560 Hyland Avenue
                          Costa Mesa, California 92626

6.22  Joint and Several Liability.  If more than one individual or entity signs this Deed of Trust as "Trustor," the obligations of all such individuals and entities shall be joint and several.

IN WITNESS WHEREOF, Trustor has duly executed this Deed of Trust as of the date first above written.

"Trustor":

B&B MANAGEMENT GROUP, LLC,
a California limited liability company

BY: _____
     Jerome Bellach
     General Manager

STATE OF CALIFORNIA      )
                         ) SS.
COUNTY OF _____    )

On ____ 30, 2000, before me _____ M LEVY_____ personally appeared Jerome Bellach personally known to me OR proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and they by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal this 30th day of June, 2000.

_____
NOTARY PUBLIC
[SEAL]

My commission expires:

Nov 1-2003

```
HARRY M. LEVY
COMM. #1240369
Notary Public-California
CONTRA COSTA COUNTY
My Comm. Exp. Nov. 1, 2003
```

H:\Smyth\Agreements\Santa Clara\Leasehold Deed of Trust.doc

EXHIBIT A
TO
LEASEHOLD DEED OF TRUST

LAND DESCRIPTION

All that certain real property situated in the City of Santa Clara, County of Santa Clara, State of California, and being more particularly described as follows:

BEGINNING at the Southwesterly corner of that certain Tract No. 1798, a map of which is filed in Book 97 at pages 48, 49 and 50, in the office of the County Recorder of said Santa Clara County; thence from said Point of Beginning Southerly along the Southerly prolongation of the Westerly line of said Tract No. 1798 South 0° 39' 50" East 270.00 feet to a point on the Northerly line of Stevens Creek Road (50.00 feet wide); thence Easterly along said Northerly line of Stevens Creek Road, North 89° 30' 00" East 110.00 feet; thence leaving said Northerly line of Stevens Creek Road, North 0° 39' 50" West 270.00 feet to a point on the Southerly line of said Tract No. 1798; thence Westerly along said Southerly line of said Tract No. 1798, South 89° 30' 00" West 110.00 feet to the Point of Beginning.

EXCEPTING THEREFROM that portion thereof conveyed to the County of Santa Clara by Deed recorded May 17, 1965 in Book 6959 Official Records, page 518, Recorder's Serial Number 2850885, said portion being more particularly described as follows:

Beginning at the point of intersection of the Northerly line of Stevens Creek Road (60.00 feet wide) with the Southerly prolongation of the Westerly line of Tract No. 1798, the map of which was filed in the Office of the Recorder of the County of Santa Clara, State of California on September 23, 1958 in Book 97 of Maps, at pages 48 through 50; thence from said point of beginning along the Northerly line of said Stevens Creek Road North 89° 30' East 110.00 feet; thence North 0° 39' 50" West, 15.00 feet to a point in a line which is parallel with the Northerly line of said Stevens Creek Road and distant Northerly 15.00 feet when measured at right angles therefrom; thence along said parallel line South 39° 30' West, 110.00 feet to the Southerly prolongation of the Westerly line of the above said Tract No. 1798; thence along said prolongation South 0° 39' 50" East, 15.00 feet to the point of beginning.

RECORDING REQUESTED BY, AND
WHEN RECORDED RETURN TO:

Raoul Smyth, Esq.
APRIA HEALTHCARE, INC.
3560 Hyland Avenue
Costa Mesa, California 92626

INSTRUCTIONS TO COUNTY RECORDER:

Index this document as:
(1) a deed of trust and
(2) a fixture filing

L-969/085

DOCUMENT: 15299952    Titles:37    Pages: 8
Fees.... 68.00
Taxes...
Copies..
AMT PAID 68.00

BRENDA DAVIS                    RDE # 008
SANTA CLARA COUNTY RECORDER     7/03/2000
Recorded at the request of      1:39 PM
Commonwealth Land Title

SUBORDINATED DEED OF TRUST, ASSIGNMENT OF RENTS, AND
FINANCING STATEMENT (FIXTURE FILING)

(SECURES PERFORMANCE OF INDEMNITY AND LEASE OBLIGATIONS ONLY)

This Subordinated Deed of Trust, Assignment of Rents, and Fixture Filing ("Deed of Trust"), dated as of June 30, 2000, is executed by B&B MANAGEMENT GROUP, LLC, a California limited liability company ("Trustor"), as trustor, whose address is 6815 Redwood Drive, Cotati, California 94931, in favor of Commonwealth Land Title Company ("Trustee"), as trustee, for the benefit of APRIA HEALTHCARE, INC., a Delaware corporation ("Beneficiary"), as beneficiary, whose address is 3560 Hyland Avenue, Costa Mesa, California 92626.

GRANT OF SECURITY

1.1    Grant of Security. Trustor, in consideration of the indebtedness secured by this Deed of Trust, irrevocably grants, transfers and assigns to Trustee, IN TRUST, WITH POWER OF SALE, AND RIGHT OF ENTRY AND POSSESSION, for the benefit and security of Beneficiary, all Trustor's existing and future rights, titles, interests, estates, powers and privileges in or to the following (collectively, the "Property"):

(a)    That certain leasehold estate, created by the Lease Agreement ("Lease") dated April 1, 1968, between the Annuity Board of the Southern Baptist Convention and Consolidated Foods Corporation covering the land, more particularly described on the attached Exhibit "A", which Lease or a memorandum thereof was recorded on March 25, 1968, in Book 8065, Page 385 of the Official Records of Santa Clara County, California;

(b)    To the extent included in the leasehold estate created under the Lease, all buildings and other improvements now or hereafter located on the Land, including, but not limited to, the Fixtures (as defined below) and all other equipment, machinery, appliances and other articles attached to such buildings and other improvements (collectively, the "Improvements");

(c)    To the extent included in the leasehold estate created under the Lease, all fixtures (including without limitation goods that are or become so related to the Land or Improvements that an interest in them arises under real estate law) and any additions or replacements (collectively, the "Fixtures") now or hereafter located on, attached to, installed in or used in connection with the Land and the Improvements;

(d)    To the extent included in the leasehold estate created under the Lease, all rights, rights-of-way, easements, licenses, profits, privileges, tenements, hereditaments and appurtenances now owned or hereafter acquired by Trustor and used in connection with the Land and the Improvements or as a means of access to either or both, including, without limitation, all water and mineral rights;

(e)    To the extent included in the leasehold estate created under the Lease, all of Trustor's existing and future right, title and interest in and to any land within the right-of-way of any open or proposed street adjoining the Land, and any and all sidewalks, alleys and strips and gores of land adjacent to or used in connection with the Land and Improvements;

(f)    All Trustor's other existing or future estates, easements, licenses, interests, rights, titles, homestead or other claims or demands, both in law and in equity in the Land and Improvements, including, without limitation, (1) all awards made for the partial or complete taking by eminent domain, or by any proceeding or purchase in lieu of eminent domain, of the Property, and (2) all proceeds of any insurance covering the Property.

Notwithstanding the foregoing, the liens and security interests herein granted do not extend to the Demised Premises (as such term is used in the Lease) or any part thereof, but only to Trustor's leasehold interest therein, and the term "Property" shall not include, and any security interest granted hereunder shall not extend to, any inventory or personal property not attached to the Improvements.

SECURED OBLIGATIONS

2.1    Secured Obligations. This Deed of Trust, and the lien it creates, is made for the purpose of securing the following obligations (collectively, the "Secured Obligations"):

(a)    Performance (including payment) of all obligations evidenced by that certain Indemnification and Insurance Agreement ("Indemnification"), dated June 29, 2000, entered into by Trustor in favor of Beneficiary, as the same may be extended, replaced, and substituted from time to time with Beneficiary's written agreement.

H:\Smyth\Agreement\Santa Clara\Sub Deed of Trust.doc

**EXHIBIT C**

(b)    the payment of all indebtedness and performance of all other obligations of Trustor to Beneficiary contained in this Deed of Trust;

(c)    payment by Trustor of all amounts advanced by (or on behalf of) Beneficiary or Trustee to improve, protect or preserve the Property or the security of this Deed of Trust, with interest on such amounts as provided in this Deed of Trust;

(d)    compliance with and performance of each obligation, covenant, and agreement of Trustor arising under or contained in the Lease; and

(e)    payment of charges as allowed by law, when such charges are made for any beneficiary statement or other statement regarding the Secured Obligations.

Notwithstanding the foregoing, the liens and security interests herein granted do not extend to the Demised Premises (as such term is used in the Lease) or any part thereof, but only to Trustor's leasehold interest therein.

## LIEN SUBORDINATION

**3.1    Subordination.** Trustor and Beneficiary acknowledge that this lien subordination is for the benefit of lenders who shall make one or more bona fide loans to Trustor (collectively, "Bank") which are secured by a lien on the Property. Trustor and Beneficiary further represent to Bank that at the present time Trustor is obligated to Beneficiary under the Indemnification.

**.2    Subordination of Priority of Lien.** At any time that there shall exist any obligations to any Bank, or any commitment of Bank to extend credit to Trustor, the lien of this Deed of Trust shall be junior and subordinate to the lien of the Bank(s) security instruments. Such subordination shall be self-executing and shall not require the execution of any further instrument; provided, however, Beneficiary will execute a subordination agreement consistent with the provisions of this Deed of Trust in recordable form if requested by Bank or Trustor.

**.3    Diligent Inquiries.** Beneficiary assumes the responsibility for being and keeping informed of the financial condition of Trustor and any other individual or entity liable on or with respect to any of the indebtedness to Beneficiary or Bank and of all other circumstances bearing upon the risk of nonpayment of the Indebtedness to Beneficiary or Bank and confirms that Bank shall have no duty to advise Beneficiary of any information regarding such condition or any such circumstances whether or not materially adverse.

**.4    Beneficiary's Authorization.** Beneficiary authorizes Bank, subject to the limitation set forth in section 3.4, without notice, demand or consent, and without affecting Beneficiary's obligations and liabilities under this Agreement, from time to time, to (a) renew, compromise, extend, accelerate or otherwise change the time for payment or the terms of any indebtedness to Bank or any part thereof, including changing the rate of interest thereon; (b) extend credit to Trustor on an unsecured basis or take security or other support for such indebtedness to Bank and exchange, enforce, waive or release any such security or other support or any part thereof; (c) apply any such security or other support and direct the order or manner of sale as Bank, in its sole discretion, may determine; and (d) release or substitute any party liable on such indebtedness to Bank, any guarantor of the indebtedness to Bank, or any other party providing support for the indebtedness to Bank.

## COVENANTS

**4.1    Payment of Secured Obligations.** Trustor shall pay and perform the Secured Obligations when due.

**.2    Sale or Lease of Property; Due on Sale Clause.** Intentionally deleted.

**.3    Inspection.** Trustor authorizes Beneficiary and its agents, representatives and employees, upon 24 hours notice or without notice in the event of an emergency, to enter at any time during normal business hours upon any part of the Property for the purpose of inspecting it and performing any of the acts Beneficiary is authorized to perform under this Deed of Trust or any of the other Lease Assignment Documents.

**.4    Defense of Actions.** Trustor shall notify Beneficiary of any action or proceeding purporting to affect (i) the security of this Deed of Trust, (ii) any of the other Lease Assignment Documents, (iii) all or any part of the Property or any interest in it, (iv) any additional or other security for the Secured Obligations, or (v) the interests, rights, powers or duties of Beneficiary or Trustee under this Deed of Trust. Trustor, at no cost or expense to Beneficiary or Trustee, shall appear in and defend the same. If Beneficiary or Trustee elects to become or is made a party to such action or proceeding, Trustor shall indemnify, defend and hold Trustee and Beneficiary harmless from all related liability, damage, cost and expense incurred by either Trustee or Beneficiary (including, without limitation, reasonable attorneys' fees and expenses consistent with Section 4.7 of this Deed of Trust), whether or not such action or proceeding is prosecuted to judgment or decision.

**.5    Protection of Security.** If Trustor fails to make any payment or to do any act required by this Deed of Trust or any of the other Lease Assignment Documents, Beneficiary may do so. Beneficiary may decide to do so each in its own discretion, without obligation to do so, without further notice or demand, and without releasing Trustor in such manner and to such extent as either may reasonably deem necessary to protect the security of this Deed of Trust. In connection with such actions Beneficiary and Trustee each have the right, without limitation, but not the obligation: (i) to enter upon and take possession of the Property; (ii) to make additions, alterations, repairs and improvements to the Property which in the judgment of either may be necessary or proper to keep the Property in good condition and repair; (iii) to appear and participate in any action or proceeding affecting or which may affect the security of this Deed of Trust or the rights or powers of Beneficiary or Trustee; (iv) to pay, purchase, contest or compromise any encumbrance, claim, charge, lien or debt which in the judgment of either may affect the security of this Deed of Trust or appear to be prior or superior to this Deed of Trust; and (v) in exercising such powers, to pay all necessary or appropriate costs and expenses and employ necessary or desirable consultants.

**.6    Beneficiary's Powers.** If Trustor fails to pay any sum, other than principal and interest on the Secured Obligations, or to perform or comply with any other obligation required by any Lease Assignment Document, Beneficiary at its election may pay such sum or comply with such obligation. Without affecting the liability of Trustor or any other person liable

for the payment of any Secured Obligation, and without affecting the lien or charge of this Deed of Trust, Beneficiary may, from time to time and without notice do any of the following: (i) release any person so liable, (ii) extend the maturity or alter any of the terms of any such obligation (provided, however, that the consent of Trustor shall be required for extension or alteration of any unpaid obligation of Trustor to Beneficiary), (iii) waive any provision of this Deed of Trust or grant other indulgences, (iv) release or reconvey, or cause to be released or reconveyed at any time at Beneficiary's option all or any part of the Property, (v) take or release any other or additional security for any Secured Obligation, or (vi) make arrangement with debtors in relation to the Secured Obligations. Waiver by Beneficiary of any right or remedy as to any transaction or occurrence shall not be deemed to be a waiver of any future transaction or occurrence. By accepting full or partial payment or performance of any Secured Obligation after due or after the filing of a notice of default and election to sell, Beneficiary shall not have thereby waived its right to (x) require prompt payment and performance in full, when due, of all other Secured Obligations, (y) declare a default for failure so to pay or perform, or (z) proceed with the sale under any notice of default and election to sell previously given by Beneficiary, or as to any unpaid balance of the indebtedness secured by this Deed of Trust.

.7      Reimbursement of Costs, Fees and Expenses Secured by Deed of Trust. Trustor shall pay, on demand, to the maximum allowable under applicable law, all costs, fees, expenses, advances, charges, losses and liabilities paid or incurred by Beneficiary and/or Trustee in administering this Deed of Trust, the collection of the Secured Obligations, and Beneficiary's or Trustee's exercise of any right, power, privilege or remedy under this Deed of Trust. Such amounts include, without limitation (a) foreclosure fees, trustee's fees and expenses, receiver's fees and expenses and trustee's sale guaranty premiums, (b) costs and fees paid or incurred by Beneficiary and/or Trustee and/or any receiver appointed under this Deed of Trust in connection with the custody, operation, use, maintenance, management, protection, preservation, collection, appraisal, sale or other liquidation of the Property, (c) advances made by Beneficiary and/or Trustee to complete or partially construct all or part of any improvements which may have been commenced on the Land, or otherwise to protect the security of this Deed of Trust, (d) costs of evidence of title, costs of surveys and costs of appraisals, and (e) costs resulting from Trustor's failure to perform any of the provisions of this Deed of Trust. Fees, costs, and expenses of attorneys include the reasonable fees and disbursements of Beneficiary's counsel and of any experts and agents, and including such fees incurred in the exercise of any remedy (with or without litigation), in any proceeding for the collection of the Secured Obligations, in any foreclosure on any of the Property, in protecting the lien or priority of the security, or in any litigation or controversy connected with the Secured Obligations, including any bankruptcy, receivership, injunction or other proceeding, or any appeal from or petition for review of any such proceeding. Reasonable counsel fees shall include fees incurred not only in enforcing the debt in any bankruptcy or receivership proceeding, but also any fees incurred in participating in the bankruptcy or receivership proceedings generally. Such sums shall be secured by this Deed of Trust and shall bear interest from the date of expenditure until paid at the default interest rate recited in the Note.

.8      Performance of Lease Obligations. Trustor shall pay and perform each and every obligation of the Lessee under the Lease as and when such obligations become payable or performable. Lessee shall not amend or modify the Lease in any manner which would materially increase the obligations, if any, of Beneficiary thereunder without the prior written consent of Beneficiary, which consent may be granted or withheld in Beneficiary's sole discretion. Beneficiary shall at all times advise the lessee under the Lease that a copy of any notice directed to Trustor thereunder must also be provided to Beneficiary.

## ASSIGNMENT OF RENTS, ISSUES AND PROFITS

5.1     Assignment of Rents, Issues and Profits. Trustor absolutely, unconditionally, and irrevocably assigns and transfers to Beneficiary all of its right, title and interest in and to all rents, issues, profits, royalties, income and other proceeds and similar benefits derived from the Property (collectively, the "Rents"), and gives to Beneficiary the right, power and authority to collect such Rents. Trustor irrevocably appoints Beneficiary its true and lawful attorney-in-fact, at the option of Beneficiary, at any time and from time to time, to demand, receive and enforce payment, to give receipts, releases and satisfactions, and to sue, in its name or in Trustor's name for all Rents, and to apply them to the Secured Obligations. However, Trustor shall have a license to collect and retain Rents (but not more than two months in advance unless the written approval of Beneficiary has first been obtained) so long as an Event of Default shall not have occurred and be continuing. The assignment of the Rents in this Article 5 is intended to be an absolute assignment from Trustor to Beneficiary and not merely the passing of a security interest.

.2      Collection Upon Default. Upon the occurrence of an Event of Default, Trustor's license to collect the Rents shall automatically terminate. Upon such termination, Beneficiary may, at any time without notice, either in person, by agent or by a receiver appointed by a court, and without regard to the adequacy of any security for the Secured Obligations, do any of the following: (i) enter upon and take possession of all or any part of the Property; and, (ii) with or without taking possession of the Property in its own name, sue for or otherwise collect such Rents(including those past due and unpaid, and all prepaid Rents and all other security for such Secured Obligations), and apply the Rents (less costs and expenses of operation and collection, including, without limitation, attorneys' fees, whether or not suit is brought or prosecuted to judgment) to a Secured Obligation, and in such order as Beneficiary may determine even if payment or performance of said Secured Obligation may not then be due. Trustor agrees that, upon the occurrence of any Event of Default, Trustor shall promptly deliver all Rents and security deposits to Beneficiary. The collection of Rents, or the entering and taking possession of the Property, or the application of Rents as provided above, shall not (a) cure or waive any Event of Default or notice of default under this Deed of Trust, (b) invalidate any act performed in response to such Event of Default or pursuant to such notice of default, or (c) cause Beneficiary to be deemed a mortgagee-in-possession of all or any part of the Property.

.3      Further Assignments. Upon Beneficiary's reasonable demand from time to time, Trustor shall execute and deliver to Beneficiary recordable assignments of Trustor's interest in any and all leases, subleases, contracts, rights, licenses and permits now or hereafter affecting all or any part of the Property. Such assignments shall be made by instruments in form and substance satisfactory to Beneficiary; provided, however, that no such assignment shall be construed as imposing upon Beneficiary any obligation with respect thereto. Beneficiary may, at its option, exercise its rights under this Deed of Trust or any such specific assignment and such exercise shall not constitute a waiver of any right under this Deed of Trust or any such specific assignment.

## REMEDIES UPON DEFAULT

6.1     Events of Default. The occurrence of any of the following events or conditions shall constitute an event of default ("Event of Default") under this Deed of Trust:

.1    The occurrence of an "Event of Default" under the Indemnification; or

.2    Trustor fails to pay any other amount owing under this Deed of Trust or the Lease within five (5) calendar days after receipt of written demand from Beneficiary or the lessor under the Lease; or

.3    Trustor fails to observe or perform any other obligation contained in this Deed of Trust within fifteen (15) calendar days after receipt of written demand from Beneficiary, or if such default is not curable within such time limit, Trustor fails to commence its cure within such time limit and diligently pursue such cure to completion; or

.4    A default under any other document or agreement that is executed by the Trustor or Trustor's successor or assign that states that the same is secured by this Deed of Trust, subject to any applicable cure period stated in such document or agreement; or

.2    Acceleration Upon Default; Additional Remedies.  Upon the occurrence of an Event of Default, Beneficiary may, at its option, terminate its obligations under the Lease Assignment Documents and declare all Secured Obligations to be immediately due and payable without any presentment, demand, protest or further notice of any kind; and whether or not Beneficiary exercises said option to accelerate, Beneficiary may:

.1    Either in person or by agent, with or without bringing any action or proceeding, or by a receiver appointed by a court and without regard to the adequacy of its security,

(i)    enter upon and take possession of all or part of the Property, in its own name or in the name of Trustee,

(ii)    conduct environmental assessments and surveys and do any other acts which it deems necessary or desirable to preserve the value, marketability or rentability of all or part of the Property or interest in the Property or increase the Property's income, or protect the security of this Deed of Trust, and

(iii)    with or without taking possession of the Property, sue for or otherwise collect the Rents, including those past due and unpaid, and

(iv)    apply the Rents (less costs and expenses of operation and collection including attorneys' fees) to any Secured Obligations, all in such order as Beneficiary may determine.

.2    The entering and taking possession of the Property, the collection of such Rents and their application shall not cure or waive any Event of Default or notice of default or invalidate any act done in response to them. Regardless of whether possession of the Property or the collection, receipt and application of any of the Rents is by Trustee, Beneficiary or a receiver, the Trustee or Beneficiary shall be entitled to exercise every right provided for in any of the Lease Assignment Documents or by law upon occurrence of any Event of Default, including the right to exercise the power of sale;

.3    Commence an action to foreclose this Deed of Trust, appoint a receiver, or specifically enforce any of the covenants contained in this Deed of Trust;

.4    Deliver to Trustee a written declaration of default and demand for sale, and a written notice of default and election to sell the Property, which notice Trustee or Beneficiary shall cause to be recorded in the official records of the County in which the Property is located;

.5    Exercise all of the rights and remedies available to a secured party under the California Uniform Commercial Code in such order and in such manner as Beneficiary, in its sole discretion, may determine (including, without limitation, requiring Trustee to assemble the Collateral and make the Collateral available to Beneficiary at a reasonably convenient location); provided, however, that the expenses of retaking, holding, preparing for sale or the like shall include reasonable attorneys' fees and other expenses of Beneficiary and Trustee and shall be additionally secured by this Deed of Trust; and/or    .

.6    Exercise all other rights and remedies provided in this Deed of Trust, in any Lease Assignment Document or other document or agreement now or hereafter securing all or any portion of the Secured Obligations, or provided by law or in equity.

.3    Foreclosure By Power of Sale.

.1    Should Beneficiary elect to foreclose by exercise of the power of sale contained in this Deed of Trust, Beneficiary shall notify Trustee and shall deposit with Trustee this Deed of Trust and the Note and such receipts and evidence of expenditures made and secured by this Deed of Trust as Trustee may require.

.2    Upon receipt of notice from Beneficiary, Trustee shall cause to be recorded, published and delivered to Trustor such notice of default and election to sell as is then required by law. After such lapse of time, recordation of notice of default, and giving of notice of sale as are required by law, Trustee shall, without demand on Trustor, sell the Property at the time and place of sale fixed by it in said notice of sale, or as lawfully postponed. Trustee may sell the Property either as a whole, or in separate lots or parcels or items and in such order as Beneficiary may direct Trustee so to do, at public auction to the highest bidder for cash in lawful money of the United States payable at the time of sale. Trustee shall deliver to such purchaser or purchasers its good and sufficient deed conveying the property so sold, but without any covenant or warranty, express or implied. The recitals of any matter or fact in such deed shall be conclusive proof of their truthfulness. Any person, including, without limitation, Trustor or Beneficiary, may purchase at such sale.

.3    After deducting all fees, costs and expenses incurred by Beneficiary or Trustee in connection with such sale, including costs of evidence of title up to the maximum allowable by applicable law, Beneficiary shall apply the proceeds of sale to payment of (i) first, all amounts expended under the terms of this Deed of Trust which are not then repaid, with accrued interest at the Default Rate; (ii) second, all other Secured Obligations; and (iii) the remainder, if any, to the person or persons legally entitled.

.4       Subject to applicable law, Trustee may postpone the sale.

.5       A sale of less than the whole of the Property or any defective or irregular sale made under this Deed of Trust shall not exhaust the power of sale provided for in this Deed of Trust; and subsequent sales may be made until all the Secured Obligations have been satisfied, or the entire Property sold, without defect or irregularity.

.4       Appointment of Receiver.  Upon the occurrence of an Event of Default under this Deed of Trust, Beneficiary, as a matter of right and without notice to Trustor or anyone claiming under Trustor, and without regard to the then value of the Property or the interest of Trustor in it, shall have the right to apply to any court having jurisdiction to appoint a receiver or receivers of the Property. Trustor irrevocably consents to such appointment and waives notice of any such application. Any such receiver(s) shall have all the usual powers and duties of receivers in similar cases and all the powers and duties of Beneficiary in case of entry as provided in this Deed of Trust, and shall continue to exercise all such powers until the date of confirmation of sale of the Property, unless such receivership is terminated sooner.

.5       Application of Funds After Default.  Except as otherwise provided in this Deed of Trust, upon the occurrence of an Event of Default, Beneficiary may, at any time without notice, apply to any Secured Obligation, in such manner and order as Beneficiary may elect, even if such Secured Obligation may not yet be due, the following: any amounts received and held by Beneficiary to pay insurance premiums or impositions or as Rents, or as insurance or condemnation proceeds, and all other amounts received by Beneficiary from or on account of Trustor or the Property, or otherwise. The receipt, use or application of any such amounts shall not affect the maturity of any indebtedness secured by this Deed of Trust, any of the rights or powers of Beneficiary or Trustee under the terms of the Lease Assignment Documents, or any of the obligations of Trustor or any guarantor under the Lease Assignment Documents; or cure or waive any Event of Default or notice of default under any of the Lease Assignment Documents; or invalidate any act of Trustee or Beneficiary.

.6       Waiver of Liens; Environmental Impairment.  Upon the occurrence of an Event of Default, to the fullest extent allowable by applicable law, Beneficiary shall have the right to (i) waive its lien against any or all of the Property, including fixtures or personal property, to the extent such Property is found to be environmentally impaired in accordance with California Code of Civil Procedure Section 726.5 and (ii) exercise all rights and remedies of an unsecured creditor against Trustor and all of Trustor's assets and property for the recovery of any deficiency and environmental costs, including, but not limited to seeking an attachment order under California Code of Civil Procedure Section 483.010. Trustor acknowledges and agrees that, regardless of any term or provision contained in this Deed of Trust or in the Lease Assignment Documents, all judgments and awards entered against Trustor relating to any of the environmental provisions of the Lease Assignment Documents shall be exceptions to any nonrecourse or exculpatory provision of the Lease Assignment Documents, and Trustor shall be fully and personally liable for all such judgments and awards entered against Trustor and such liability shall not be limited to the original principal amount of the Secured Obligations. Trustor's obligations under this paragraph shall survive the foreclosure, deed in lieu of foreclosure, release, reconveyance, or any other transfer of the Property or this Deed of Trust. For the purposes of any action brought under this Section, Trustor hereby waives the defense of laches and any applicable statute of limitations.

.7       Remedies Not Exclusive.  Trustee and Beneficiary shall each be entitled to enforce payment and performance of any Secured Obligation and to exercise all rights and powers under this Deed of Trust or any other Lease Assignment Document or other agreement, or any law, even if some or all of the Secured Obligations may be otherwise secured, whether by guaranty, mortgage, deed of trust, pledge, lien, assignment or otherwise. Neither the acceptance nor enforcement (whether by court action or pursuant to the power of sale or other powers herein contained) of this Deed of Trust shall impair Trustee's or Beneficiary's right to realize upon or enforce any other security held by Trustee or Beneficiary. Trustee and Beneficiary shall each be entitled to enforce this Deed of Trust and any other security for the Secured Obligations held by Beneficiary or Trustee in such order and manner as they may in their absolute discretion determine. No remedy conferred upon or reserved to Trustee or Beneficiary is intended to be exclusive of any other remedy in this Deed of Trust, any other agreement, or at law, but each shall be cumulative and in addition to every other remedy available to Beneficiary. Every power or remedy given by any of the Lease Assignment Documents to the Trustee or Beneficiary or to which either of them may be otherwise entitled may be exercised, concurrently or independently, from time to time and as often as may be deemed expedient by the Trustee or Beneficiary, and either of them may pursue inconsistent remedies. Trustor may be joined in any action brought by Beneficiary to foreclose under or otherwise enforce this Deed of Trust.

.8       Request for Notice.  Trustor requests that a copy of any notice of default and that a copy of any notice of sale under this Deed of Trust be mailed to it at the address set forth in the first paragraph of this Deed of Trust.

MISCELLANEOUS

7.1      Amendments.  This instrument cannot be waived, modified, discharged or terminated except in writing signed by the party against whom enforcement of such changes is sought.

.2       Waivers.  Trustor waives, to the extent permitted by law, (i) the benefit of all laws (whenever enacted) providing for any appraisal before sale of any portion of the Property, and (ii) all rights of valuation, appraisal, stay of execution, notice of election to mature or declare due the whole of the Secured Obligations and marshaling in the event of foreclosure of this Deed of Trust, and (iii) all rights and remedies which Trustor may have under the laws of the State of California regarding the rights and remedies of sureties. However, nothing contained in this Deed of Trust shall be deemed to be a waiver of Trustor's rights under Section 2924, 2924b and 2924c of the California Civil Code, or under Sections 580a, 580d or 726 of the California Code of Civil Procedure.

.3       Statements by Trustor.  Trustor shall, within ten (10) days after notice from Beneficiary, deliver to Beneficiary a written statement setting forth the amounts then unpaid and secured by this Deed of Trust and stating whether any offset or defense exists against such amounts.

.4       Statements by Beneficiary.  For any statement or accounting requested by Trustor or any other entitled person pursuant to Section 2943 or Section 2954 of the California Civil Code or any other applicable law, or for any other document or instrument furnished to Trustor by Beneficiary, Beneficiary may charge: (i) the maximum amount permitted by law at the time of the request, (ii) if no such maximum, then the greater of Beneficiary's customary charges or the actual cost to Beneficiary.

.5    Reconveyance by Trustee. Trustee shall reconvey the Property, without warranty, to the person or persons legally entitled to it upon (i) written request of Beneficiary stating that all Secured Obligations have been paid and fully performed, (ii) surrender by Beneficiary of this Deed of Trust to Trustee for cancellation and exaction, and (iii) payment by Trustor of Trustee's fees and the costs and expenses of executing and recording any requested reconveyance. The recitals in any such reconveyance of any matter or fact shall be conclusive proof of their truthfulness. The grantee in any such reconveyance may be described as: "the person or persons legally entitled thereto."

.6    Notices. All notices, demands, approvals and other communications provided for in this Deed of Trust shall be in writing and shall be personally delivered or mailed by United States first class mail, certified or registered, return receipt requested, postage prepaid, to the appropriate party at the address set forth in the first paragraph of this Deed of Trust. Addresses for notice may be changed from time to time by written notice to all other parties. All communications shall be deemed given (a) on the date of mailing if deposited in the United States mail in the city where the address of the addressee is situated, or otherwise (b) on the second Business Day after mailed. "Business Day" means any day other than a Saturday, Sunday, or a day on which Beneficiary is closed for business. Nonreceipt of any communication as the result of a change of address of which the sending party was not notified or as the result of a refusal to accept delivery shall be deemed receipt of such communication.

.7    Acceptance by Trustee. Trustee accepts this trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law.

.8    Headings. Article and section headings are included in this Deed of Trust for convenience of reference only and shall not be used in construing this Deed of Trust.

.9    Severability. Every provision of this Deed of Trust is intended to be severable. The illegality, invalidity or unenforceability of any provision of this Deed of Trust shall not in any way affect or impair the remaining provisions of this Deed of Trust, which provisions shall remain binding and enforceable.

.10    Subrogation. To the extent that Beneficiary shall advance funds to pay any outstanding lien, charge or prior encumbrance against the Property, Beneficiary shall be subrogated to any and all rights and liens held by any owner or holder of such outstanding liens, charges and prior encumbrances, regardless of whether such liens, charges or encumbrances are released.

.11    Governing Law. This Deed of Trust shall be governed by, and construed in accordance with, the laws of the State of California.

.12    Interpretation. In this Deed of Trust the singular shall include the plural and the masculine shall include the feminine and neuter and vice versa, if the context so requires; and the word "person" shall include corporation, partnership or other form of association. Any reference in this Deed of Trust to any document, instrument or agreement creating or evidencing an obligation secured hereby shall include such document, instrument or agreement both as originally executed and as it may from time to time be modified.

.13    Trust Irrevocable. The trust created by this Deed of Trust is irrevocable by Trustor. All amounts payable by Trustor pursuant to this Deed of Trust shall be paid without notice, demand, counterclaim, setoff, deduction or defense and without abatement, suspension, deferment, diminution or reduction. Trustor waive(s) all rights conferred by statute or otherwise to any abatement, suspension, deferment, diminution or reduction of any amount secured by this Deed of Trust and payable by Trustor to Beneficiary or Trustee.

.14    Further Assurances. Trustor agrees to do or cause to be done such further acts and things and to execute and deliver or to cause to be executed and delivered such additional assignments, agreements, powers and instruments, as Beneficiary or Trustee may reasonably require to: (i) correct any defect, error or omission in this Deed of Trust or the execution or acknowledgment of this Deed of Trust, (ii) subject to the lien of this Deed of Trust any of Trustor's properties covered or intended to be covered by this Deed of Trust, (iii) perfect, maintain, and keep valid and effective such lien, (iv) carry into effect the purposes of this Deed of Trust or (v) better assure and confirm to Beneficiary or Trustee their respective rights, powers and remedies under this Deed of Trust.

.15    Trustee's Powers. Upon written request of Beneficiary and presentation of this Deed of Trust and the Note for endorsement, Trustee may (i) reconvey all or any part of the Property, (ii) consent in writing to the making of any map or plat thereof, (iii) join in granting any easement thereon, or (iv) join in any extension agreement, agreement subordinating the lien or charge hereof, or other agreement or instrument relating hereto or to all or any part of the Property. Trustee may take such action at any time, and from time to time, without liability and without notice, and without affecting the personal liability of any person for payment of the indebtedness or the performance of any other Secured Obligation or the effect of this Deed of Trust upon the remainder of the Property.

.16    Substitution of Trustee. Beneficiary may, from time to time, by written instrument executed and acknowledged by Beneficiary and recorded in the county or counties where the Property is located, or by any other procedure permitted by applicable law, substitute a successor or successors for the Trustee under this Deed of Trust.

.17    Successors and Assigns. Subject to Section 3.5, above, this Deed of Trust applies to, inures to the benefit of and binds all parties to this Deed of Trust, their heirs, legatees, devisees, administrators, executors, successors and assigns.

.18    Fixture Filing. The personal property in which Beneficiary has a security interest includes goods which are or are to become fixtures on the Property. This Deed of Trust is intended to serve as a fixture filing pursuant to the terms of the applicable Uniform Commercial Code. This filing is to be recorded in the real estate records of the county in which the Property is located. In that regard, the following information is provided:

| | |
|---|---|
| Name of Debtor: | B&B MANAGEMENT GROUP, LLC,<br>a California limited liability company |
| Address of Debtor: | 6815 Redwood Drive<br>Cotati, California 94931 |
| Name of Secured Party: | APRIA HEALTHCARE, INC,<br>a Delaware corporation |
| Address of Secured Party: | 3560 Hyland Avenue<br>Costa Mesa, CA 92626<br>Attention: Director, Real Estate |

.19    **Joint and Several Liability.**  If more than one individual or entity signs this Deed of Trust as "Trustor," the obligations of all such individuals and entities shall be joint and several.

.20    **Married Persons.**  Any married person who signs this Deed of Trust agrees that recourse for all Secured Obligations may be had against his or her separate and community property.

IN WITNESS WHEREOF, Trustor has duly executed this Deed of Trust as of the date first above written.

"Trustor";

B&B MANAGEMENT GROUP, LLC
a California limited liability company

By: _____
Jerome Bellach
General Manager

STATE OF CALIFORNIA         )
                                          ) SS.
COUNTY OF Contra Costa )

On June 30, 2000, before me, HARRY M. LEVY, personally appeared Jerome Bellach personally known to me OR proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal this 30th day of June, 2000.

_____
NOTARY PUBLIC
[SEAL]

My commission expires:

Nov. 1, 2003

```
HARRY M. LEVY
COMM. #1240380
Notary Public-California
CONTRA COSTA COUNTY
My Comm. Exp. Nov. 1, 2003
```

EXHIBIT A
TO
SUBORDINATED DEED OF TRUST

LAND DESCRIPTION

All that certain real property situated in the City of Santa Clara, County of Santa Clara, State of California, and being more particularly described as follows:

BEGINNING at the Southwesterly corner of that certain Tract No. 1798, a map of which is filed in Book 97 at pages 48, 49 and 50, in the office of the County Recorder of said Santa Clara County; thence from said Point of Beginning Southerly along the Southerly prolongation of the Westerly line of said Tract No. 1798 South 0° 39' 50" East 270.00 feet to a point on the Northerly line of Stevens Creek Road (50.00 feet wide); thence Easterly along said Northerly line of Stevens Creek Road, North 89° 30' 00" East 110.00 feet; thence leaving said Northerly line of said Stevens Creek Road, North 0° 39' 50" West 270.00 feet to a point on the Southerly line of said Tract No. 1798; thence Westerly along said Southerly line of said Tract No. 1798, South 89° 30' 00" West 110.00 feet to the Point of Beginning.

EXCEPTING THEREFROM that portion thereof conveyed to the County of Santa Clara by Deed recorded May 17, 1965 in Book 6959 Official Records, page 518, Recorder's Serial Number 2850885, said portion being more particularly described as follows:

Beginning at the point of intersection of the Northerly line of Stevens Creek Road (60.00 feet wide) with the Southerly prolongation of the Westerly line of Tract No. 1798, the map of which was filed in the Office of the Recorder of the County of Santa Clara, State of California on September 23, 1958 in Book 97 of Maps, at pages 48 through 50; thence from said point of beginning along the Northerly line of said Stevens Creek Road North 89° 30' East 110.00 feet; thence North 0° 39' 50" West, 15.00 feet to a point in a line which is parallel with the Northerly line of said Stevens Creek Road and distant Northerly 15.00 feet when measured at right angles therefrom; thence along said parallel line South 89° 30' West, 110.00 feet to the Southerly prolongation of the Westerly line of the above said Tract No. 1798; thence along said prolongation South 0° 39' 50" East, 15.00 feet to the point of beginning.