United States District Court
For the Northern District of California

*e-filed 8/1/08*

NOT FOR CITATION

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SUSAN SANDELMAN, AS TRUSTEE OF THE ESAN TRUST,<br><br>    Plaintiff,<br><br>  v.<br><br>B&B PROPERTY MANAGEMENT, LLC, dba BELLACH'S LEATHER FOR LIVING,<br><br>    Defendant.<br>_____/ | No. C08-00681 HRL<br><br>**ORDER ON DEFENDANT'S MOTION TO SET ASIDE DEFAULT**<br><br>**[Re: Docket No. 28]** |

Before the court is defendant's Amended Motion to Set Aside Default. Plaintiff opposes the motion.[1] Having considered the papers filed by the parties and the arguments of counsel, the court now enters its order.

## I. BACKGROUND

Plaintiff Susan Sandelman, as Trustee of the Esan Trust ("Sandelman"), sues defendant B&B Management Group, LLC ("B&B") for breach of promissory note, money lent, foreclosure of deed of trust, and claim and delivery.[2] Plaintiff's claim concerns the property at

---

[1] Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, all parties who have appeared in this action have expressly consented that all proceedings may be heard and finally adjudicated by the undersigned.

[2] In the complaint, plaintiff erroneously referred to B&B as "B&B Property Management, LLC." However, B&B was the entity served, the entity that entered into the underlying agreements, and the entity now before the court.

1  4695 Stevens Creek Boulevard, Santa Clara, California, and certain agreements executed
2  between defendant and plaintiff's predecessor in interest, Apria Healthcare.  In 2000, B&B
3  executed a promissory note ("Note") in favor of Apria Healthcare.  The Note was secured by a
4  Leasehold Deed of Trust and a Subordinated Deed of Trust (both on the Stevens Creek
5  property).  Apria Healthcare later assigned all rights in the note and deeds of trust to
6  Sandelman.

7  B&B subleased the Stevens Creek property to Bellach's Leather For Living, Inc., aka
8  Bellach's Leather Furniture ("Bellach's").  B&B and Bellach's are owned by the same two
9  individuals.  Bellach's operates a furniture store at the Stevens Creek location.

10  The note matured in September 2007, but B&B failed to pay the substantial amount then
11  due.  In January 2008, plaintiff filed suit in this court.  The summons and complaint were served
12  on B&B on February 8; its responsive pleading was apparently due on February 28.  It does not
13  appear that any formal extension of time to plead was sought or granted.

14  Meanwhile, Bellach's filed bankruptcy in early March 2008.  Although plaintiff's action
15  was against B&B, which was not in bankruptcy, Bellach's convinced the bankruptcy court on
16  March 12 to issue a temporary order ("TRO") which prohibited Sandelman from foreclosing on
17  B&B's lease or terminating Bellach's sublease.  Specifically, this order told plaintiff to put the
18  action she filed in this court on hold.  The court understands that the order, unless renewed,
19  would expire on April 4, 2008.

20  On April 2, 2008, B&B hired attorney Mikel Bryan to represent it in this action.  Bryan
21  contacted Darryl Horowitt, plaintiff's counsel, the following day.  Although Bryan did not
22  obtain a formal extension of time to plead from Horowitt, he believed that their April 3rd
23  conversation established an understanding that he had a reasonable amount of time to file a
24  responsive pleading.  Horowitt, in contrast, declares that he told Bryan that plaintiff planned to
25  pursue entry of default as soon as the bankruptcy court dissolved its temporary restraining
26  order. Late on April 4, 2008, Bryan contacted Horowitt to tell him that he was filing a Motion
27  to Stay. Bryan was advised that plaintiff had already e-filed a Request to Enter Default at 3:23
28

2

1  P.M. B&B did file its Motion to Stay one and one-half hours later. Default, however, was
2  entered on Monday, April 8, 2008.

## II. LEGAL STANDARD

"The court may set aside an entry of default for good cause." FED. R. CIV. P. 55(c). The Ninth Circuit has formulated three areas of inquiry to guide the court's analysis: (1) whether setting aside the entry of default prejudices the plaintiff; (2) whether defendant's culpable conduct led to the default; and (3) whether defendant has a meritorious defense. *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696 (9th Cir. 2001).

## III. DISCUSSION

### A. Prejudice to Plaintiff

Sandelman argues that setting aside the default would further delay her efforts to pursue remedies for B&B's September 2007 default. Every plaintiff has this same argument. The record, however, does not demonstrate a particularly high level of urgency to pursue her legal rights.[3] Sandelman sent notices to B&B between September and November 2007. It then waited until January 29, 2008 to file this suit. If, as alleged, a responsive pleading was due from B&B by February 28, plaintiff seems to have been willing to delay entry of default - at least until the March 12 issuance of the TRO. Despite these gaps in plaintiff's efforts to obtain remedy, when the TRO expired on April 4, plaintiff could wait no longer. At that time, knowing that B&B had legal representation and was eager to file a motion to pursue the matter through mediation or arbitration, Sandelman immediately requested entry of default.

"[W]here there has been no merits decision, appropriate exercise of district court discretion under Rule 60(b) requires that the finality interest should give way fairly readily, to further the competing interest in reaching the merits of a dispute." *TCI*, 244 F.3d at 696. Because plaintiff's argument that it is prejudiced by further delay is not weighty, plaintiff fails to make a persuasive case for prejudice.

### B. Defendant's Culpable Conduct

---

[3] By her own admission, plaintiff says that "This is not a situation in which Plaintiff rushed to the courthouse to enter default." Pl. Supp. Memo. of P&A in Opp'n to Def's Mot. to Set Aside Default, at 5.

3

B&B clearly knew that as of September 2007 it was in breach of its financial obligations to Sandelman. There is some suggestion that representatives of the two parties began negotiations late in 2007. When no agreement was reached, B&B should not have been surprised when Sandelman filed suit, serving the summons and complaint on February 8, 2008.

Defendant does not challenge the sufficiency of service; it is indisputable it had actual notice of the suit. Indeed, Bellach's (B&B's sister company, owned by defendant's two principals) sought and obtained a TRO from the bankruptcy court that specifically targeted Sandelman's suit against B&B. Although B&B might have hoped that the TRO would turn into an injunction or that some resolution of the Sandelman claim could be reached through negotiation, prudence demanded that B&B take precautions to protect its legal interests (specifically, its right to plead) in the pending federal action. B&B did not, however, take precautions until April 2, when it engaged attorney Bryan. (Reportedly, B&B intended to use Bellach's bankruptcy attorney but was delayed in hiring counsel because Bellach's trustee in bankruptcy objected to using the same attorney to defend B&B in this suit.) Bryan was engaged with very little time to act.

Bryan almost immediately spoke on the telephone with Sandelman's attorney, Horowitt. The court is faced with conflicting declarations about the conversation(s). In retrospect, perhaps Bryan should have obtained a formal extension of time (a stipulation or—at a minimum—a confirmation letter). Alternatively, Bryan might have applied to this court for more time. Regardless of his options at the time, Bryan believed that he had an understanding with Horowitt that default would not be immediately entered. It is not clear whether Bryan was justified in his belief or was merely hoping for that result.

It is clear, however, that B&B failed to act with prudence and that Bryan, assuming too much, was unacceptably casual in his dealings with Horowitt. Nevertheless, guided by the principle that cases should ordinarily be decided on their merits, the court concludes that the neglect of B&B and Bryan was not culpable conduct. That is, it was not so culpable that it should not be excused. If B&B has a defense to Sandelman's claims, then it should be permitted to assert its defense and subject the claim to a judicial determination.

4

### C. Meritorious Defense

B&B's moving papers argue that its "defense" to plaintiff's claim is that defendant wants to "pursue contractual provisions in the promissory note and leasehold deed of trust, requiring mediation and arbitration of any disputes between the parties." Def.'s Mem. of P. & A. in Supp. of Mot. for Relief from Default, at 3. Defendant did not cite to any language in the Leasehold Deed of Trust, but the Note does provide that any claim or controversy "shall, at the option of any party . . . be submitted to mediation." If mediation is not used or if it fails, " . . . then the dispute shall be determined by arbitration . . ." The Note also says that, in the event any claim " . . . becomes the subject of a judicial action, each party hereby waives its respective right to trial by jury . . ."

During the hearing on defendant's motion, the court observed that the parties' agreement to mediate and/or arbitrate was not a defense on the merits to plaintiff's claims. Their agreement merely gave the parties a choice of the forum in which any claims would be decided. Arbitration was one option for adjudication. As the Note's language made clear, an action in court was another alternative. If B&B had filed a timely responsive pleading, it could have then rightfully demanded that Sandelman submit the claims to mediation/arbitration.

The court asked Bryan whether B&B had any "defense" that would defeat or reduce plaintiff's claims. For example, was there any defect in the formation of the agreements or in the assignment of Apria's rights to Sandelman? Bryan said "no." Any other possible defenses: payment, fraud, mistake, release, novation, offset, anything at all? Again, "no." Defense counsel could not suggest (much less offer any evidence) that B&B had any defense on the merits. His responses effectively acknowledged that B&B did not.[4]

Accordingly, the court cannot find a reason to set aside the default. There are no defenses to litigate. Aside from delay of the inevitable, B&B would gain nothing. While the defendant may believe that delay is in its best interest, it is not a consideration that this court is

---

[4] Defendant's counsel did express some reservations regarding the amount owed to plaintiff but was "not prepared to say" more precisely what defendant's argument might be.

5

1  willing to support. This court would always prefer to see a case litigated on its merits, but here
2  there are no "merits" to litigate.

### IV.  ORDER

For the foregoing reasons, IT IS ORDERED THAT defendant's Motion to Set Aside Default is DENIED.

Dated: 8/1/08



HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

United States District Court
For the Northern District of California

6